884 So.2d 1046 (2004)
ANDERSON TRUCKING SERVICE, INC., et al., Petitioners,
v.
Diane GIBSON, etc., et al., Respondents.
No. 5D03-3312.
District Court of Appeal of Florida, Fifth District.
October 15, 2004.
*1047 Edward W. Levine and Jessica S. Forbes of Wagenfeld Levine, Miami, for Petitioners.
Richard A. Staggard of Anderson & Howell, P.A., Jacksonville Beach, for Respondents.
SAWAYA, C.J.
Intermodal Caribbean Express, Inc. [ICE] and Anderson Trucking Services, Inc. [Anderson] seek certiorari review of an order rendered by the trial court disqualifying their counsel from further representation of them in the underlying wrongful death action filed by Diane Gibson, as parent and next friend of Ladaise Gibson, a minor, and as personal representative of the estate of Bennie Evans James Jr., deceased. The issues we must resolve are: 1) whether Gibson had standing to seek and obtain the disqualification order we now review; and 2) if Gibson had standing, whether the trial court misapplied the standard for disqualification adopted by the court in State Farm Mutual Automobile Insurance Co. v. K.A.W., 575 So.2d 630, 634 (Fla.1991). We conclude that under the facts and circumstances *1048 of this particular case, Gibson did not have standing and, even if she did, the trial court incorrectly applied the K.A.W. standard. Accordingly, we grant the petition and quash the order under review.
Gibson filed suit against a number of defendants seeking damages for the wrongful death of the decedent caused by a fatal tractor trailer accident. The defendants involved in the disqualification proceedings are ICE and Anderson, owners of the trailer, and Steven Minchew, driver and owner of the tractor. As to these defendants, the complaint alleged that ICE and Anderson were vicariously liable for the acts of Minchew based on the theories of joint venture and ultrahazardous activities. A third count alleged that ICE and Anderson were directly liable for failing to check the qualifications of Minchew before allowing him to transport the trailer owned by them.
The disqualification order was directed to Edward W. Levine, who initially represented all three defendants. Levine withdrew from representation of Minchew to avoid the appearance of a conflict, and Minchew retained other counsel. A couple of days after Levine withdrew from representation of Minchew, Gibson filed a motion to disqualify Levine from further representation of Anderson and ICE, alleging that Levine had taken a position in the litigation adverse to Minchew. In its order of disqualification, the trial court explained why it granted Gibson's motion to disqualify:
It is well-settled by case law that Gibson has standing to seek Mr. Levine's disqualification in a case in which a conflict of interest clearly calls into question, the fair or efficient administration of justice. See Zarco Supply Company v. Bonnell, 658 So.2d 151, 154 (Fla. 1st DCA 1995). It is also clear that actual proof of prejudice to a party is not a prerequisite to disqualification of an attorney before disqualification can be ordered. See State Farm Mutual Automobile Insurance Company v. K.A.W., 575 So.2d 630, 634 (Fla.1991). In that latter case, the Supreme Court set forth the standard which should be applied in a conflict of interest case to determine whether an attorney should be disqualified. The Court specifically stated that:
"One seeking to disqualify opposing counsel was required to show that (1) an attorney/client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client." 575 So.2d at 633.
In this case, it is clear that an attorney/client relationship existed between Minchew and Mr. Levine. As the Supreme Court noted in its opinion in State Farm, that relationship creates an irrefutable presumption that Mr. Levin[e] and Minchew exchanged confidential information. It is also clear [th]at the second prong of the test is met because Mr. Levine has represented both Minchew and ICE/Anderson in this case. Thus, the Court need only determine whether Minchew and ICE/Anderson may potentially have adverse interests in this case as the case develops.
Here, Gibson has alleged (i) that ICE and Anderson are vicariously liable for the actions of Minchew and (ii) that ICE and Anderson have committed independent torts which make them jointly liable with Minchew. It is conceivable, and perhaps even likely, that Minchew and ICE/Anderson will be pointing fingers at each other, with each seeking to *1049 establish that the other party is subject to all of the liability. This scenario leads to at least the possibility that information disclosed by Mr. Minchew in the course of his attorney/client relationship with Mr. Levine could be used by ICE/Anderson to support any position which they may take contrary to Minchew's interests. It is that very possibility which causes this Court to conclude that Mr. Levine and his law firm must be disqualified from further participation in this case.
Certiorari is the appropriate remedy to review orders granting a motion to disqualify counsel. See Carnival Corp. v. Romero, 710 So.2d 690 (Fla. 5th DCA 1998); City of Apopka v. All Corners, Inc., 701 So.2d 641 (Fla. 5th DCA 1997). The standard of certiorari review we must apply in the instant case is whether the trial court's order of disqualification constitutes a departure from the essential requirements of law. Key Largo Rest., Inc. v. T.H. Old Town Assocs., Ltd., 759 So.2d 690 (Fla. 5th DCA 2000); Swensen's Ice Cream Co. v. Voto, Inc., 652 So.2d 961 (Fla. 4th DCA 1995).
Disqualification of counsel implicates a wide range of interests. It is generally agreed that a client has a right to counsel of his or her choice. Disqualification may impose extreme hardships on the client because this very valuable right is taken away. Time and effort must be expended to find a suitable replacement and, when one is found, the client may suffer financial hardship in attempting to retain the substitute. Moreover, disqualification may unalterably damage the relationship and confidences developed between attorney and client. Although the ethical rules that govern attorney/client relationships are primarily intended to protect the client, see K.A.W., disqualification also implicates the attorney's interest in representing clients of his or her choice, and in some instances it may adversely affect counsel's ability to trade on his or her experiences and expertise in a specified area of the law. Hence, attorneys are not fungible items that can be removed and conveniently replaced without causing undue hardship to the client and to the attorney. Because slavish adherence to conflict of interest rules may produce unwarranted results in some instances, the courts have consistently recognized that "[d]isqualification of a party's chosen counsel is an extraordinary remedy and should be granted sparingly." Cunningham v. Appel, 831 So.2d 214, 215 (Fla. 5th DCA 2002) (citations omitted); see also Vick v. Bailey, 777 So.2d 1005 (Fla. 2d DCA 2000); Carnival Corp.; City of Apopka.
In order to determine whether the trial court departed from the essential requirements of the law in granting the extraordinary remedy of disqualification in the instant case, we must first determine whether Gibson had standing to seek the disqualification of counsel for ICE and Anderson. See K.A.W. If Gibson had standing, we must next determine whether disqualification is appropriate by applying the standard adopted by the court in K.A.W., which requires the party seeking the disqualification to show that: 1) an attorney/client relationship existed; and 2) the attorney represents another client regarding a matter, or substantially related matter, that is adverse to the interests of the former client seeking the disqualification. K.A.W., 575 So.2d at 633. As to the first part of the standard, if an attorney/client relationship existed, an irrefutable presumption arises that the client disclosed confidences to the attorney.
Regarding the standing issue, Gibson is seeking to disqualify the attorney of an opposing party who never represented Gibson. In K.A.W., the court held that *1050 certain instances may arise when this may be appropriate. In that case, Mr. and Mrs. Wilkerson and their daughter were injured in a two-car accident and retained the Schlesinger law firm to file a personal injury action against the driver of the other car, the owner of the other car, and the plaintiff's uninsured motorist insurer. The Wilkersons subsequently added as defendants the uninsured motorist insurer of Mr. Wilkerson's employer and another insurance company. In addition, the same law firm represented the Wilkersons in a medical malpractice action filed against various health-care providers for alleged negligent treatment of the Wilkersons' daughter after the accident. Counsel for the Wilkersons determined that Mr. Wilkerson may have committed a negligent act that contributed to the accident, so Mr. Wilkerson discharged that attorney and retained another who had formerly been a member of the Schlesinger firm. The Schlesinger law firm, on behalf of the wife and daughter, filed an amended complaint in the personal injury action, this time naming Mr. Wilkerson as a defendant. Mr. Wilkerson consented to be sued up to the limits of his insurance coverage. Mr. Wilkerson's insurers, not surprisingly, protested by moving to disqualify the Schlesinger law firm on the basis that the potential existed that the Schlesinger firm had obtained and would use confidential information gained during the course of its prior representation of Mr. Wilkerson to obtain a judgment that the insurers would be obligated to pay. Concluding that these insurers had standing to seek the disqualification of the Schlesinger firm, the court specifically stated:
The question then is whether the insurers may "stand in the shoes" of their insured for purposes of seeking disqualification of the Schlesinger firm on grounds of conflict of interest. Comments to the Rules of Professional Conduct indicate that under certain circumstances someone other than the client may request disqualification. Thus, where a conflict "is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question." Comment to Rule Regulating The Florida Bar 4-1.7. See In re Gopman, 531 F.2d 262 (5th Cir.1976) (government had standing to challenge alleged conflict of interest involving simultaneous representation of labor union and three union officials who appeared as witnesses before a grand jury).
K.A.W., 575 So.2d at 632-33.
The fair administration of justice was compromised in K.A.W. because the Schlesinger law firm was in a position to use confidential information gained during the course of the prior representation of Mr. Wilkerson in the subsequent action against him. In addition, the insurance carriers had standing to seek the firm's disqualification because it was they who were obligated to pay any damage award rendered against Mr. Wilkerson. In essence, the suit against Mr. Wilkerson was in name only because the true targets were the insurance carriers. Therefore, the insurance carriers were actually the real parties in interest and stood in the shoes of Mr. Wilkerson, which gave them standing to seek disqualification of the Schlesinger firm.
The instant case is totally different. Here, Gibson is not responsible for any judgment that may result, and Gibson certainly does not stand in the shoes of Minchew or any other defendant. Moreover, the court in K.A.W. held that one of the purposes of requiring an attorney to maintain the confidences of a client is to prevent the attorney from gaining "an informational advantage in the form of confidences gained during a former representation *1051 of his client's current opponent." K.A.W., 575 So.2d at 632 (citations omitted). Unlike the situation in K.A.W., because the attorney for ICE and Anderson never represented Gibson, that attorney did not gain an informational advantage from confidences gained from a former representation of Gibson that can be used against Gibson in the attorney's current representation of ICE and Anderson. Hence, in the instant case, it is not the alleged conflict that calls into question the fair administration of justice; rather, it is the disqualification of ICE and Anderson's chosen counsel. The Comment to Rule Regulating The Florida Bar 4-1.7 recognizes that certain ethical rules relating to conflict of interest may be misused:
Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment.
While we do not say that the motion to disqualify constitutes a form of harassment, we do say that the trial court departed from the essential requirements of the law in holding that Gibson had standing to seek disqualification of ICE and Anderson's counsel.
Moreover, even if Gibson had standing, the trial court departed from the essential requirements of the law in concluding that the second prong of the K.A.W. standard was met. That prong requires that the attorney subject to the disqualification motion represent the interests of a current client that are adverse to the same interests of the current client's opponent who the attorney formerly represented. But because the attorney never represented Gibson and because Gibson, unlike the situation in K.A.W., does not stand in the shoes of Minchew or ICE or Anderson, this requirement cannot be met. Specifically, the trial court held that the interests of Minchew were adverse to the interests of his co-defendants, ICE and Anderson, and that this circumstance satisfied the second prong of the K.A.W. test. We disagree. But even if we agreed, the trial court's reasoning is flawed. Specifically, the trial court reasoned that ICE and Anderson had adverse interests to Minchew sufficient to grant the disqualification because: 1) ICE and Anderson were vicariously liable for the actions of Minchew; and 2) ICE and Anderson committed independent acts of negligence that made them jointly liable with Minchew.
The courts have consistently held that a party may not be held vicariously liable if the tortfeasor is exonerated. Mobil Oil Corp. v. Bransford, 648 So.2d 119 (Fla.1995); Bankers Multiple Line Ins. Co. v. Farish, 464 So.2d 530 (Fla.1985); Georgia-Pac. Corp. v. Reid, 501 So.2d 653 (Fla. 5th DCA 1986), review denied, 509 So.2d 1118 (Fla.1987). Here, Gibson has alleged that Minchew, the tortfeasor, directly acted in a manner that caused damage to Gibson and that any liability on the part of ICE and Anderson flows from that act under theories of vicarious liability. Because a finding that Minchew is not liable precludes vicarious liability of ICE and Anderson, their interests are most accurately characterized as consistent with one another, not adverse. Hence, as to the counts based on joint venture and ultrahazardous activity wherein Gibson alleges that ICE and Anderson are vicariously liable for the negligence of Minchew, the interests of each defendant are the same, to-wit: to establish that Minchew was not negligent at the time the accident occurred.
Gibson argues that the count for negligent hiring is based on direct negligence rather than vicarious liability and, therefore, the interests of Minchew and ICE and Anderson are adverse because of *1052 the perceived need to lessen the amount of liability of a single party via joint and several liability. While we agree that an action for negligent hiring is based on the direct negligence of the employer,[1] we disagree that the interests of Minchew and ICE and Anderson are adverse. In order to establish liability based on negligent hiring, the plaintiff must first establish that the employee committed a wrongful act that caused the injury.[2] Unless Minchew committed a wrongful act that caused the injury in the instant case, no liability can befall ICE and Anderson for negligently hiring him. Hence, the interests of Minchew and ICE and Anderson are consistent for the purpose of establishing that Minchew did not commit a wrongful act.
We conclude that given the facts and circumstances of the instant case, Gibson did not have standing to seek the disqualification of the attorney for ICE and Anderson. We further conclude that notwithstanding our resolution of the standing issue, the trial court misapplied the standard for disqualification adopted in K.A.W. Because the trial court departed from the essential requirements of the law, we grant the writ and quash the order granting Gibson's motion to disqualify.
PETITION GRANTED; ORDER QUASHED.
SHARP, W., J., concurs.
PLEUS, J., dissents with opinion.
PLEUS, J., dissenting.
I respectfully dissent.
The trial court's order is well-reasoned and correctly applies Florida law. I conclude *1053 that Judge Barlow followed the correct procedure in this case and did not depart from the essential requirements of the law.
I further note there is no transcript of the disqualification hearing, so particular deference is owed to the trial court's factual findings. Arthur v. Gibson, 654 So.2d 983 (Fla. 5th DCA 1995).
The determinative issue is whether there are potentially adverse interests. Respondents cite two compelling ones: (1) if ICE/Anderson is found vicariously liable, Minchew's personal assets will be protected in case the verdict exceeds $1 million; and (2) if ICE/Anderson is found actively negligent, liability can be apportioned, thereby reducing Minchew's liability.
The petitioner misrepresents that the allegations against it are in the nature of vicarious liability rather than active negligence. The amended complaint alleges that ICE/Anderson negligently caused the accident by requiring the load to be picked up later at night and delivered early the next day without determining if the driver was physically able to safely complete the trip.
The petitioner repeatedly alleges that "no confidences have been learned," which ignores the fact that the law creates an irrebutable presumption that confidences were passed if the attorney/client relationship is established.
For these reasons, I would affirm the trial court.
NOTES
[1] See Island City Flying Serv. v. General Elec. Credit Corp., 585 So.2d 274, 278 (Fla.1991) ("As noted, General Electric's suit against Island City was based on a theory of negligent hiring or retention. Unlike a suit based on the doctrine of respondeat superior, this cause of action is grounded upon the negligence of the employer.") (citation omitted); Williams v. Feather Sound, Inc., 386 So.2d 1238, 1239-40 (Fla. 2d DCA 1980) ("Most jurisdictions, including Florida, recognize that independent of the doctrine of respondeat superior, an employer is liable for the willful tort of his employee committed against a third person if he knew or should have known that the employee was a threat to others.") (footnotes omitted), review denied, 392 So.2d 1374 (Fla.1981). The reason that negligent hiring is not a form of vicarious liability is that unlike vicarious liability, which requires that the negligent act of the employee be committed within the course and scope of the employment, negligent hiring may encompass liability for negligent acts that are outside the scope of the employment. See Tallahassee Furniture Co., Inc. v. Harrison, 583 So.2d 744 (Fla. 1st DCA 1991), review denied, 595 So.2d 558 (Fla.1992); Watson v. City of Hialeah, 552 So.2d 1146 (Fla. 3d DCA 1989); Garcia v. Duffy, 492 So.2d 435 (Fla. 2d DCA 1986).
[2] Texas Skaggs, Inc. v. Joannides, 372 So.2d 985, 987 (Fla. 2d DCA 1979) ("The Joannides are correct in their position that Florida recognizes negligent hiring, training or retention as legitimate bases of recovery against an employer. Skaggs-Albertsons argues, and we agree, however, that in order to impose liability on an employer for such torts, a plaintiff must first show that he was injured by the wrongful act of an employee.") (citations omitted), cert. denied, 381 So.2d 767 (Fla.1980); Walsingham v. Browning, 525 So.2d 996, 998 (Fla. 1st DCA 1988) ("The establishment of a wrongful act by an employee has also been required in order to impose negligence liability upon an employer for negligent hiring or retention of an employee whose conduct is in question.") (citation omitted); see also Malicki v. Doe, 814 So.2d 347, 363 (Fla.2002) ("The claim of negligent hiring is brought after an employee has harmed a third party through his or her office of employment."); Muzzio v. Auto-Owners Ins. Co., 799 So.2d 272, 274 (Fla. 2d DCA 2001) ("The negligent hiring theory provides no remedy to the plaintiffs unless the negligently hired employee is also negligent in the operation of the motor vehicle."), review denied, 817 So.2d 848 (Fla.2002).