988 So.2d 1180 (2008)
YANG ENTERPRISES, INC., Li-Woan Yang, and Tyng-Lin Yang, Petitioners,
v.
Mavis GEORGALIS, Respondent.
No. 1D07-6479.
District Court of Appeal of Florida, First District.
August 7, 2008.
*1182 John C. Hanson, II, of The Barthet Firm, Miami, for Petitioners.
Martin A. Fitzpatrick, M. Stephen Turner and Mark E. Walker of Broad and Cassel, Tallahassee; Fred E. Pearson, Tallahassee, for Respondent.
THOMAS, J.
We previously denied this petition for writ of certiorari in our opinion dated April 2, 2008, where Petitioners sought to disqualify Respondent's law firm, asserting that Broad and Cassel also represented Petitioners. We also issued an order to Petitioners and their counsel to show cause why attorney's fees should not be imposed pursuant to section 57.105(1), Florida Statutes (2007). We now impose the sanction of attorney's fees under this statute and write to explain our reasoning.

I. Facts
Since November 2001, Petitioners have been involved in multiple administrative, civil, and criminal cases related to Respondent's employment with the Florida Department of Transportation. Petitioners filed suit against Respondent for trade secret theft, tortious interference with a business relationship, and trade libel. In 1999, Petitioners retained Anthony Palma, an attorney in Broad and Cassel's Orlando office, for estate planning services. Mr. Palma represented Petitioners until June 2001.
When Petitioners filed suit against Respondent in November 2001, Respondent retained two attorneys from Broad and Cassel's Tallahassee office, M. Stephen Turner and Martin Fitzpatrick. In 2007, more than five years after Mr. Palma's completion of their estate planning, Petitioners filed a motion to disqualify Turner, Fitzpatrick, and the Broad and Cassel law firm.
In their motion, Petitioners argued that they have been current clients of Broad and Cassel since 1999, and they did not realize until 2007 that the firm represented Respondent. Petitioners argued that the firm's simultaneous representation of adverse parties presented a conflict of interest. Petitioners further asserted that they never consented to the firm's representation of Respondent in the instant case; therefore, the law firm's dual representation violates rules 4-1.7 and 4-1.10 of the Florida Rules of Professional Conduct.
The trial court denied Petitioners' motion to disqualify, determining that Petitioners are former clients of Broad and Cassel, not current clients. The trial court's ruling was not based on Petitioners' status as clients, however, but on waiver. The court found that, given the extensive ongoing litigation, Petitioners knew of the purported conflict of interest years before they moved to disqualify the firm. Because Petitioners did not move to disqualify Broad and Cassel until 2007, and because it would have greatly prejudiced Respondent to remove the firm that had been representing her for six years, the trial court ruled that Petitioners had waived any claim regarding a purported conflict of interest. The court found it unnecessary to reach the disputed factual issue of whether Petitioners had consented to the dual representation.
Significantly, Petitioners did not seek an evidentiary hearing to establish the material facts, nor did Petitioners object to the trial court's factual conclusions regarding their motion.

II. Analysis of Attorney Disqualification Issue
Certiorari is the appropriate remedy to review orders denying a motion to disqualify counsel. See Zarco Supply *1183 Co. v. Bonnell, 658 So.2d 151, 153 (Fla. 1st DCA 1995). Accordingly, Petitioners had to show that the circuit court departed from the essential requirements of law and that this departure resulted in a material injury that cannot be corrected on postjudgment appeal. See Zarco, 658 So.2d at 153. An error of law is not necessarily a departure from the essential requirements of law. See, e.g., Rich v. Fisher, 655 So.2d 1149 (Fla. 4th DCA 1995). "A ruling constitutes `a departure from the essential requirements of the law' when it amounts to `a violation of a clearly established principle of law resulting in a miscarriage of justice.'" Byrd v. Southern Prestressed Concrete, Inc., 928 So.2d 455, 457 (Fla. 1st DCA 2006) (quoting Combs v. State, 436 So.2d 93, 96 (Fla.1983)).
Disqualification of an attorney is an extraordinary remedy and must be sought with "`reasonable promptness ... to prevent ... using the motion as a tool to deprive [the movant's] opponent of counsel of his choice after completing substantial preparation of the case.'" Lee v. Gadasa Corp., 714 So.2d 610, 612 (Fla. 1st DCA 1998) (quoting Transmark, U.S.A. v. State, Dep't of Ins., 631 So.2d 1112 (Fla. 1st DCA 1994)). Such motions are "generally viewed with skepticism because ... [they] are often interposed for tactical purposes." Alexander v. Tandem Staffing Solutions, Inc., 881 So.2d 607, 608-09 (Fla. 4th DCA 2004) (citing Evans v. Artek Sys. Corp., 715 F.2d 788 (2d Cir.1983); Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d 222 (6th Cir.1988)); see also Key Largo Restaurant, Inc. v. T.H. Old Town Assocs., Ltd., 759 So.2d 690, 695 (Fla. 5th DCA 2000) (Griffin, J., dissenting) (noting that five-year delay in filing successful motion to disqualify constituted "litigation tactic" and caused other party prejudice). We believe Petitioners' motion, and certainly this petition for writ of certiorari, were filed as just such a litigation tactic.
Even had the trial court not properly found that Petitioners waived a claim of conflict, Petitioners' assertion that they were current clients was baseless and not supported by the material facts or applicable law. Additionally, based on the undisputed facts, Petitioners had no legal cause to seek disqualification as former clients. See rule 4-1.9, Fla. R. Prof. Conduct; Morse v. Clark, 890 So.2d 496 (Fla. 5th DCA 2004).
Petitioners argued below that they are current clients of Broad and Cassel and relied primarily on two cover letters sent from a paralegal in Broad and Cassel's Orlando office in 2004 and a paralegal's bill for minor changes to their estate file in 2007. None of these acts indicated a continuing legal representation, but rather they were ministerial tasks performed to update the completed estate planning documents. This ministerial work does not meet the definition of the "continuous representation rule." See Hampton v. Payne, 600 So.2d 1144, 1146 (Fla. 3d DCA 1992). There was no "clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney." Muller v. Sturman, 79 A.D.2d 482, 437 N.Y.S.2d 205, 208 (1981). It is undisputed that Petitioners did not speak to an attorney in 2004 concerning their minor beneficiary changes, nor did any attorney work on their estate plan between June 2001, when Mr. Palma's work was completed, and 2007, when some minor tasks were performed by a paralegal.
Broad and Cassel's representation of Petitioners came to an end in June 2001, making them former clients of the firm. While Petitioners subjectively asserted below that the firm still represented them, the objective record evidence belies their *1184 claim. See Gen. Elec. Real Estate Corp. v. S.A. Weisberg, Inc., 605 So.2d 955, 956 (Fla. 4th DCA 1992) (subjective impression of conflict requires evidentiary hearing in light of contradictory evidence that such evidence was objectively reasonable). As we noted, Petitioners never sought an evidentiary hearing to establish a factual basis to support their purely subjective claim that they were current clients of Broad and Cassel. Estate planning was the single task that Mr. Palma undertook for Petitioners. He completed this task in June 2001, long before Petitioners moved to disqualify Broad and Cassel in 2007. Thus, Broad and Cassel was not prohibited from representing Respondent.
Even assuming, arguendo, that Petitioners demonstrated material facts below to support the assertion that they were current clients, we find no basis for their claim here that the trial court departed from the essential requirements of law in determining that Petitioners waived any conflict by waiting until 2007 to file their motion to disqualify. See Lee, 714 So.2d at 612. The facts presented demonstrate that Petitioners had actual knowledge of the conflict in 2001 but did not act on this knowledge until much later, when disqualifying the firm would severely prejudice Respondent.
Further, no decision of this court supports Petitioners' assertion that the trial court's ruling of waiver departed from the essential requirements of law. While the Fifth District's decision in Key Largo Restaurant may indeed provide a legal justification for this disqualification effort, that decision is not the law of the First District. Rather, this court's only applicable decisions are Lee and Transmark, neither of which supports Petitioners' motion.
Moreover, Petitioners asserted no legitimate argument below that their delay in filing the motion to disqualify did not prejudice Respondent. Since 2001, Attorneys Turner and Fitzpatrick have been representing Respondent in not only the trade secrets case and counterclaim, but also in the other civil, criminal, and ethics litigation. They are intimately familiar with the facts and procedural background of the cases. No other attorneys or firm can plausibly represent Respondent at this juncture and gain the detailed knowledge that Turner and Fitzpatrick have accumulated over the years.

III. Attorney's Fees Under Section 57.105, Florida Statutes
A court "shall" award attorney's fees under section 57.105(1), Florida Statutes, where it is clear that the offending party has asserted a claim that is unsupported by material facts or by the law applicable to the material facts. See Boca Burger, Inc. v. Forum, 912 So.2d 561, 570 (Fla.2005); Albritton v. Ferrera, 913 So.2d 5, 9 (Fla. 1st DCA 2005). Here, Petitioners' uncorroborated, subjective, and highly dubious claim that they "didn't know" Broad and Cassel had represented Respondent since 2001 cannot constitute a material fact, given Petitioners' failure to request an evidentiary hearing. The trial court likewise found this claim unworthy of credence. We find, therefore, that Petitioners' claim that the trial court departed from the essential requirements of law in its finding should not have been asserted here. Consequently, we impose attorney's fees against both Petitioners and their attorney pursuant to section 57.105(1), Florida Statutes.
We also find the relevant factual assertions made by Petitioners' attorney to be not credible. Specifically, at oral argument he claimed no knowledge of the nature of Broad and Cassel's work for Petitioners after 2001, or whether a paralegal or an attorney had performed that work. Counsel also insisted that neither he nor *1185 Petitioners knew or could have known that Broad and Cassel was representing Respondent in both this and the other litigation. In addition, counsel persistently claimed that the other litigation is unrelated to the present case, that Petitioners have been uninvolved in that litigation, and, as a result, they did not know that Broad and Cassel represented Respondent before 2007. These parties have been involved in ongoing litigation since November 2001. Further, Petitioners do not dispute that they were fact witnesses in the related cases, nor that their allegations are the foundation for other litigation where Broad and Cassel's same attorneys represent Respondent; therefore, their attorney's statements at oral argument claiming a lack of knowledge are unsupported by the record. See Dep't of Transp. v. Fla. Comm'n on Human Relations, et al., 867 So.2d 489 (Fla. 1st DCA 2004).
Additionally, counsel's assertion that he should not be held liable for one-half of the attorney's fees under section 57.105(1), Florida Statutes, is unavailing. It is not enough for counsel to assert that he "vetted" his clients' representation of the facts. To avoid liability, counsel must make an objectively reasonable investigation of the purported facts supporting a claim. Counsel could not credibly rely on Dr. Yang's affidavit asserting that Petitioners did not discover the conflict until 2007, nor can counsel claim ignorance of the representation by virtue of the fact that Petitioners were represented by other attorneys before retaining him. The record reflects that Petitioners told their original attorney that Broad and Cassel represented them in their estate planning; therefore, knowledge of the conflict was imputed through Petitioners' original attorney. See Prudential Ins. Co. of America v. Anodyne, Inc., 365 F.Supp.2d 1232, 1240 n. 11 (S.D.Fla.2005) (noting that, although the court would not reach the waiver issue, "how is knowledge imputed to a large corporation if not through its own counsel?"). As this court observed in Transmark, extensive proceedings make it inescapable that a client would know of a potential conflict with an opposing party's attorney. Here, while Petitioners were not parties to all of the cases against Respondent in the years of litigation, they were and are central players in this protracted conflict.

Conclusion
We conclude that this petition for certiorari was not supported by any material facts or by an application of the law to those facts; therefore, pursuant to section 57.105(1), Florida Statutes (2007), we order Petitioners and their attorney, John C. Hanson, II, to pay Respondent's appellate attorney's fees. Petitioners and their attorney shall share equal responsibility for these fees.
REMANDED for a factual determination of the amount of attorney's fees incurred by Respondent in this certiorari proceeding.
ALLEN and WEBSTER, JJ., concur.