MAKAR, J.,
dissenting.
I.
While at an Anheuser-Busch (A-B) brewing and shipping facility in Jacksonville, Florida, Christopher Staples was involved in an accident connected to his employment with Container Carrier Corporation (Container). Mr. Staples received workers’ compensation benefits from Container, which is self-insured. Mr. Staples then filed suit against A-B, seeking to recover on negligence and premises liability theories.
Fernandez Trial Attorneys, P.A. (Fernandez), which had been A-B’s legal counsel in the past, appeared on behalf of A-B in the lawsuit. Pertinent to this proceeding, Fernandez also filed a notice of lien on behalf of Staples’s employer, Container, against any future judgment in Mr. Staples’s favor to recoup its expenditures in the workers’ compensation proceeding.
Mediation in the matter was scheduled, but cancelled after Mr. Staples’s counsel made an issue of Fernandez representing both A-B and Container at the mediation. Fernandez indicated that it would attend on behalf of A-B and that a non-lawyer claims manager employed by Container would attend on behalf of that company. Upon cancellation of the mediation, Mr. Staples promptly filed a motion alleging that a conflict of interests existed between A-B and Container and that Fernandez should be disqualified from further representing A-B and Container in the case.
Fernandez responded with client waivers demonstrating that both A-B and Container understood and consented to Fernandez representing their interests jointly. Both companies waived “any conflict which may currently or in the future exist because of the law firm’s representation” of them in the litigation. The trial court, after considering legal memoranda and argument of counsel, issued a lengthy order that, distilled to its core, found as a matter of law that a non-waivable conflict existed as to Fernandez’s concurrent representation of A-B and Container. The trial court prohibited Fernandez from representing either A-B or Container, allowing both companies thirty days to get new lawyers to represent them individually. Fernandez seeks certiorari review, asserting the trial court departed from the essential requirements of law in denying AB and Container their right to be represented by counsel of their choice. See Yang Enterprises, Inc. v. Georgalis, 988 So.2d 1180, 1183 (Fla. 1st DCA 2008) (“Certiorari is the appropriate remedy to review orders denying a motion to disqualify counsel.”). As this Court recently noted, “because disqualification of counsel denies a party its counsel of choice, such disqualification constitutes a material injury not remediable on plenary appeal.” Walker v. River City Logistics Inc., 14 So.3d 1122, 1123 (Fla. 1st DCA 2009). Thus, the only question is whether the order below departed from the essential requirements of law. Id. .
It
Disqualification of a lawyer is a serious matter, so serious that it is highly disfa *316 vored because it operates to deprive a litigant of its chosen attorney, interfering with a relationship having constitutional implications. In re BellSouth Corp., 384 F.3d 941, 955-56 (11th Cir.2003). It follows that disqualification of counsel is an extraordinary step, resorted to only sparingly. Melton v. State, 56 So.3d 868, 872-73 (Fla. 1st DCA 2011) (citing Minakan v. Husted, 27 So.3d 695 (Fla. 4th DCA 2010); Walker, 14 So.3d 1122 (Fla. 1st DCA 2009)). Motions for disqualification are “generally viewed with skepticism because ... [they] are often interposed for tactical purposes.” Yang Enterprises, 988 So.2d at 1183 (citations omitted).
No dispute exists that Fernandez’s representation of A-B and Container in fhis litigation amounts to a conflict as defined under the Rules of Professional Responsibility. See R. Regulating Fla. Bar 4-1.7(a). But that does not end the analysis. Both A-B and Container recognized this conflict, voluntarily agreed they both wanted Fernandez to represent thém, and explicitly waived the conflict in writing. That was their informed choice to make. What constitutes a conflict under subsection (a) of Rule 4-1.7 is not necessarily a non-waivable conflict under subsection (b); if that were the case no conflicts could ever be waived. The question raised here is whether the trial court’s legal ruling, that the conflict between A-B and Container was non-waivable under the circumstances presented, departs from the essential requirements of law.[5] It does for two reasons.
A.
First, the interests of A-B and Container in this routine tort case are not so fundamentally antagonistic that disqualification is compelled. It is not uncommon that clients choose to have one lawyer represent their interests jointly, even if a conflict exists. If clients are fully informed and make voluntary decisions to allow for joint representation (here through written waivers), the basic concerns of the Rules are ameliorated.
To demonstrate that a conflict is one to which a client may consent, four criteria must be met:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.
R. Regulating Fla. Bar 4-1.7(b). The trial court set out these criteria in its order, holding that criteria (1) and (3) were not shown. Though the trial court’s order is lengthy, the totality of its reasoning as to *317 these two criteria is contained in these two sentences:
It is not reasonable for the challenged law firm in this case to conclude that it will be able to provide competent and diligent representation to the divergent interests of each client. Further, the representation requires the firm to assert for one or more clients positions which are adverse to those of one or more of the other clients, and to do so in the same proceeding before the same tribunal.
Addressing the first sentence, it is clear legal error to conclude that a lawyer cannot reasonably represent two sophisticated corporate businesses that have voluntarily and specifically averred that they desire the lawyer to jointly represent them and waive in writing “any conflict which may currently or in the future exist because of the law firm’s representation” in the matter. To the contrary, it is presumptively reasonable for a lawyer representing A-B and Container under the circumstances of this ease at the mediation stage to believe he will be able to “provide competent and diligent representation to each affected client.” Id. Multi-party representation may not be the norm, but it has become commonplace due to its significant benefits (and risks)[6] that the parties may choose to bear. See William E. Wright, Jr., Ethical Considerations In Representing Multiple Parties In Litigation, 79 Tul. L.Rev. 1523, 1526 (2005) (discussing ethical considerations and practical issues arising in multiple-party representation) (noting that “applying economic realities and recognizing strategic alliances, it is often advantageous to limit the number of attorneys involved in litigation”).
Nothing in the record establishes that joint representation was other than reasonable. Fernandez believed it could provide competent and diligent representation to A-B and Container, an assessment in which both companies concurred. Mr. Staples’s counsel could identify no prejudice arising from the joint representation. As such, the trial court’s ruling to the contrary simply disregards the voluntary, fully-informed decisions of A-B and Container, thereby depriving two clients of their chosen lawyer’s services. Harm of this type and magnitude is irremediable once judgment is entered making certiora-ri appropriate. While trial courts should be wary, as the trial court here was, to potential conflicts that run afoul of the Rules, the joint representation of A-B and Container, supported by written waivers, with no countervailing harm to Mr. Staples, provides no legal basis to conclude that criterion (1) was unmet.
B.
Next, the second sentence — which is an almost verbatim statement of the language of criterion (3) — misapprehends the procedural context of the case. The third criterion only applies where “the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal.” (Emphasis added). This criterion does not apply in this case at this juncture because mediation is not a “proceeding before a tribunal.” The Florida Bar Rules define “Tribunal” as
a court, an arbitrator in a binding arbitration proceeding, or a legislative body, administrative agency, or other body *318 acting in an adjudicative capacity. A ... body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party’s interests in a particular matter.
R. Regulating Fla. Bar 4 (preamble). Me-diations do not meet this definition; no neutral official renders a binding legal judgment. Instead, in mediation the “de-cisionmaking authority rests with the parties.” § 44.1011, Fla. Stat. The mediator lacks authority to adjudicate any aspect of a dispute. Fla. R. Med. 10.420(a)(2). Because mediation does not meet the definition of “tribunal,” a mediation cannot be a “proceeding before a tribunal” as specified in Rule 4 — 1.7(b)(3).
Florida Rule 4-1.7 is an analogue of Model Rule of Professional Conduct 1.7, which likewise prohibits representation involving “the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.” Model Rules of Profl Conduct R. 1.7. The definition of tribunal is also similar. Id. R. 1.0. Notably, the commentary to Model Rule 1.7, discussing paragraph (b)(3), states that “this paragraph does not preclude a lawyer’s multiple representation of adverse parties to a mediation (because mediation is not a proceeding before a “tribunal” under [the terminology rule]).” Id. R. 1.7 cmt. 17. Because mediation is not a proceeding before a tribunal, criterion (3) of Rule 4-1.7(b) is met, and the conflict presented in this case was one to which A-B and Container may consent at the mediation stage.[7]
That mediation is outside of the Rule’s application is consistent with the goal that mediation be a cost-efficient way to resolve disputes. Here, the disqualification order did the opposite; it created a domino effect that multiplied the costs on two companies that did no more than try to reduce their legal expense by using one law firm. Such a result makes little sense in the mediation context.
Beyond that, counsel for Mr. Staples at oral argument was unable to identify any harm to Mr. Staples’s interests that would result from the Fernandez firm’s joint representation; none. Even if A-B and Container were to hire separate counsel, nothing would prevent the new attorneys from collaborating on behalf of their clients. Given the irremediable harm to A-B and Container it causes, and the absence of any harm to Mr. Staples from the joint representation by Fernandez, the disqualification of Fernandez has no utility other than as an impediment to mediation. If allowed to stand, the order may embolden the tactical use of threats of disqualification as a strategy to gain settlement leverage at the mediation stage by potentially raising litigation costs to opponents.[8]
*319 A side issue that has no bearing on the legal issue presented is the trial court’s denial of A-B and Container’s motion for rehearing. Perhaps because they believed their written waivers were sufficient to resolve the conflict issue, or even for their own strategic reasons, A-B and Container did not initially disclose a previously signed indemnity agreement between themselves. The agreement — identified in an affidavit submitted with their motion for rehearing-reflects that Container agreed to indemnify A-B for any liability in this case. The effect of the agreement aligned the interests of A-B and Container because any judgment against A-B would be a liability of Container. The trial court was not made aware of this agreement prior to its initial decision; had it been brought to the trial court’s attention, it would have been helpful in solidifying that the joint representation met applicable legal standards. Even without the indemnity agreement, the record sufficiently shows that disqualification of Fernandez was unwarranted.
III.
Because the trial court’s ruling departs from the essential requirements of law, depriving two clients of the services of their chosen counsel, the disqualification order should be reversed with instructions to allow Fernandez to represent both A-B and Container.

. Fernandez’s petition, though not citing Rule 4-1.7, asserts that its disqualification was improper because the trial court misapplied the legal standard, tracking language from the caselaw interpreting the rule. See, e.g., State Farm Mut. Auto. Ins. Co. v. K.A.W., 575 So.2d 630 (Fla.1991) (citing Rule 4-1.7); Anderson Trucking Serv., Inc. v. Gibson, 884 So.2d 1046 (Fla. 5th DCA 2004) (citing K.A.W.). Mr. Staples’s response, understanding the nature of Fernandez’s legal challenge, contains citations to the caselaw applying Rule 4-1.7 as well as to both subsections of Rule 4-1.7. Identification of the specific judicial act to be reviewed (the disqualification order) and the legal reasoning for its reversal (it applied the incorrect legal standard under the caselaw applying Rule 4-1.7) enables appellate review. See Philip J. Padovano, Florida Appellate Practice § 16:9 (2012 ed.) (citing cases).

. That A-B and Container have agreed to joint representation by Fernandez does not end Fernandez’s ethical responsibilities, which include continual reevaluation of the joint representation under ethical rules and full, ongoing communications with A-B and Container as circumstances evolve or change.

. If the case goes beyond meditation and a "proceeding before a tribunal” — such as a trial — is scheduled, the question of whether a conflict then exists can be raised. At that point,' the trial court can assess whether joint representation, if it still exists, will involve the "assertion of a position adverse to another client” that fails to meet 4-1.7(b) — along with the other, criteria of the Rule. Whether a lienor would appear at trial in this type of case is doubtful, but it might occur.

. Tempering this tactic is that litigants, absent a special relationship to the lawyers sought to be disqualified, ordinarily will lack standing to make formal motions to disqualify. See Zarco Supply Co. v. Bonnell, 658 So.2d 151, 154 (Fla. 1st DCA 1995) (finding standing only where movant could demonstrate prejudice). Here, the trial court erred in concluding that Mr. Staples had standing to seek to disqualify Fernandez because, as admitted at oral argument, Mr. Staples can point to no prejudice arising from the joint representa *319 tion by Fernandez. The trial court, however, can sua sponte raise conflict issues, making Mr. Staples’s standing a non-issue.