# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D20-2887

———————————————

GLOBAL LAB PARTNERS, LLC,
JAMES W. DILLARD, SR.,
ALEXANDER COVER, CHRISTIE
COVER, MARK L'HOMMEDIEU,
and JOHN D. LEVITAN, SR.,

     Appellants,

     v.

PATRONI ENTERPRISES, LLC, a
Florida limited liability
company, and KATHLEEN VAN
ALSTINE,

     Appellees.

———————————————

On appeal from the Circuit Court for Escambia County.
Gary L. Bergosh, Judge.

September 22, 2021

ROBERTS, J.

Appellants seek review of a non-final order disqualifying Richard Beckish and Arthur Fletcher ("Counsel") from representing them in a commercial dispute involving Appellees. Appellants argue there was no competent, substantial evidence of a prior attorney-client relationship between Counsel and any Appellee to support disqualification under Rule 4-1.9 of the Rules

Regulating the Florida Bar. Appellants also argue Appellees waived disqualification by waiting too long to file their motion.[1] We disagree and affirm the order on appeal for the following reasons.

*Facts*

In December 2016, Appellants James Dillard, Alexander Cover, Mark L'Hommedieu, and John Levitan met with Clyde Patroni to discuss the operations of a business called Global Lab Partners, LLC ("GLP"). Also present were general counsel for GLP, Richard Beckish, and assistant general counsel, Arthur Fletcher.

Patroni Enterprises, LLC,[2] later purchased five units of GLP from Mr. Dillard. Mr. Patroni went on to maintain an office at the GLP facility with access to the company's books and records. In the following months, Mr. Patroni approached Kathleen Van Alstine with the hopes of convincing her to invest in GLP. Ms. Van Alstine purchased ten units of GLP from Mr. Dillard. As consideration, Ms. Van Alstine and Mr. Patroni asked that Mr. Patroni be placed in a role that would allow him to manage the day-to-day operations of GLP's subsidiary. By July 2017, the GLP subsidiary under Mr. Patroni's leadership had yet to generate any profits and was forced to incur debt. It later defaulted on its debt.

In October 2018, Appellees filed the lawsuit that formed the basis of this action. They alleged nine counts against Appellants, which included actions for breach of contract, fraudulent misrepresentation, and fraudulent inducement. Appellants filed affirmative defenses and counterclaims as well as a third-party complaint and cross-claims against Mr. Patroni.

---

[1] Appellants raise an additional Issue that there were no legal grounds to disqualify Counsel under Rule 4-3.7 of the Rules Regulating the Florida Bar. This Issue does not merit discussion as the trial court did not disqualify Counsel under Rule 4-3.7.

[2] Clyde Patroni is the sole managing member of Patroni Enterprises.

In August 2019, eight months after Counsel filed a notice of appearance for Appellants in the case, Appellees filed a motion to disqualify Counsel under Rule 4-1.9. Appellees argued Counsel could not represent Appellants in the instant litigation because Counsel had a prior attorney-client relationship with Appellees involving the same or substantially related matters.

Appellants opposed disqualification, denying the existence of a prior attorney-client relationship. Appellants filed affidavits from Counsel that admitted Counsel had prepared and reviewed various documents referenced in Appellees' motion to disqualify; however, Counsel stated they only acted as general counsel for GLP and denied an attorney-client relationship with any Appellee.

The trial court held an evidentiary hearing on the motion to disqualify. At the hearing, Mr. Patroni testified as to several documents admitted into evidence, asserting that Counsel, acting on his behalf, had prepared the documents or had substantially participated in their creation. Mr. Patroni testified Counsel had substantially counseled him in areas relevant to Patroni Enterprises' acquisition of GLP, Ms. Van Alstine's acquisition of membership interest in GLP, and Mr. Patroni's position as representative/manager, among other things.

After considering the testimony and evidence presented at the hearing, the trial court orally granted the motion as the representation was "blurred." The court later rendered an order disqualifying Counsel from representing any of the Appellants, stating that "[Counsel's] relationship with the entities involved was interconnected, as evidenced by the transcript of the hearing."[3] This appeal followed.

---

[3] To the extent Appellants argue the trial court failed to make adequate factual findings in the order on appeal, they did not move for rehearing to preserve the issue for appeal. *See Owens v. Owens*, 973 So. 2d 1169 (Fla. 1st DCA 2007); *Pensacola Beach Pier, Inc. v. King*, 66 So. 3d 321 (Fla. 1st DCA 2011).

*Analysis*

We have jurisdiction. *See* Fla. R. App. P. 9.130(3)(a)(E). The trial court's order is reviewed for an abuse of discretion. *See ASI Holding Co., Inc. v. Royal Beach & Golf Resorts, LLC*, 163 So. 3d 668, 669 (Fla. 1st DCA 2015) (citing *Young v. Achenbauch*, 136 So. 3d 575, 580 (Fla. 2014)). "Such discretion is 'limited by the applicable legal principles, [but] the appellate court will not substitute its judgment for the trial court's express or implied findings of fact which are supported by competent, substantial evidence.'" *ASI Holding Co., Inc.*, 163 So. 3d at 669 (quoting *Young*, 136 So. 3d at 581 (quoting *Applied Digital Sols., Inc. v. Vasa*, 941 So. 2d 404, 408 (Fla. 4th DCA 2006))). Under an abuse of discretion standard of review, a ruling will be upheld unless it is found to be "arbitrary, fanciful, or unreasonable," such that discretion is abused "only where no reasonable man would take the view adopted by the trial court." *Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980).

*I.*

The Rules Regulating the Florida Bar provide the standard for determining whether an attorney should be disqualified in a given case. *Young*, 136 So. 3d at 580. In the instant case, the pertinent rule raised on appeal is Rule 4-1.9, which establishes that a lawyer who has formerly represented a client in a matter must not afterwards represent another person in the same or a substantially related matter in which that person's interests are adverse to the interests of the former client.

In cases seeking disqualification under Rule 4-1.9, a two-prong test applies. The moving party must show "that (1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client." *State Farm. Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991). Appellants only dispute the first prong of the test.

4

To satisfy the first prong of the test, the moving party must demonstrate that their perception that an attorney-client relationship existed is "objectively reasonable." *See Yang Enters., Inc. v. Georgalis*, 988 So. 2d 1180, 1184 (Fla 1st DCA 2008). There is no legal requirement for a single formalized document to demonstrate an attorney-client relationship exists; instead, the test for determining that the relationship exists "is a subjective one and hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice." *JBJ Inv. of S. Fla., Inc. v. S. Title Grp., Inc.*, 251 So. 3d 173, 177 (Fla. 4th DCA 2018) (quoting *Bartholomew v. Bartholomew*, 611 So. 2d 85, 86 (Fla. 2d DCA 1992)). Therefore, whether the trial court abused its discretion turns on the singular issue of whether Mr. Patroni's subjective belief was an objectively reasonable one.

Mr. Patroni testified to his subjective belief that he had an attorney-client relationship with Counsel. Appellees produced competent, substantial evidence to substantiate this perception. Based on the totality of the circumstances presented at the hearing, the trial court had a basis to deem the perceived attorney-client relationship "objectively reasonable." Upon proof of a prior attorney-client relationship that was interconnected with the current litigation, the trial court appropriately granted Appellees' motion to disqualify Counsel. The trial court did not abuse its discretion in disqualifying Counsel under Rule 4-1.9.

## II.

Appellants argue that even if Counsel could have been disqualified, Appellees waived the issue by waiting too long to file their motion. "A motion to disqualify should be made with reasonable promptness after the party discovers the facts which lead to the motion." *Transmark, U.S.A., Inc. v. State, Dep't of Ins.*, 631 So. 2d 1112, 1116 (Fla. 1st DCA 1994). Florida courts have made a point of enforcing this rule to bar a plaintiff or defendant from using disqualification as an "ambush tactic" to undermine opposing counsel once litigation is seriously underway. Appellees waited roughly eight months after the appearance of Counsel to file their motion. The question of waiver in the instant case turns on the issue of "reasonable promptness."

There is no bright-line rule governing the amount of time within which a party can be found to be reasonably prompt. Notably, most relevant case law in Florida has found waiver after delays of greater than eight months. *See, e.g.*, *Zayas-Bazan v. Marcelin*, 40 So. 3d 870 (Fla. 3d DCA 2010) (holding that officers waived their right to disqualify opposing counsel by failing to file a motion until more than two-and-one-half years after the suit began); *Case v. City of Miami*, 756 So. 2d 259 (Fla. 3d DCA 2000) (holding that the city waived its right to seek disqualification as a result of waiting seven years to file the motion); *Balda v. Sorchych*, 616 So. 2d 1114 (Fla. 5th DCA 1993) (holding that a trial court did not depart from the essential requirements of the law by denying a disqualification motion made more than three years after the commencement of the lawsuit); *L.E.B. v. D.D.C.*, 304 So. 3d 54 (Fla. 2d DCA 2020) (holding that a delay of greater than one year waived a motion for disqualification). Moreover, the circumstances here do not support a finding of waiver. Appellees filed their motion to disqualify between pleadings and discovery, a natural demarcation in the proceedings, and the motion was not preceded by a great deal of work done by either side's counsel. Appellees did not waive disqualification.

We recognize the disqualification of opposing party's counsel is an extreme maneuver that cuts to the very heart of the litigation at hand. *See Gutierrez v. Rubio*, 126 So. 3d 320, 321 (Fla. 3d DCA 2013). It should be met with a degree of skepticism even if filed in a more timely manner than the motion here. We do not endorse an eight-month delay in filing a motion to disqualify or assert that an eight-month delay in and of itself is "reasonably prompt." However, given the particular facts of this case and the standard of review on appeal, the trial court's order is AFFIRMED.

BILBREY, J., concurs; MAKAR, J., dissents with opinion.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

MAKAR, J., dissenting.

Disqualification of an attorney is a big deal: it severs the client from the legal counsel he's chosen and trusts; imposes burdensome economic costs on the client, who must shoulder the added expense of hiring and prepping new legal counsel; and injects disorder directly into the central nervous system of the client's litigation affairs. *Lee v. Gadasa Corp.*, 714 So. 2d 610, 612–13 (Fla. 1st DCA 1998) (refusing to sanction "the use by a corporate adversary of a disciplinary rule for the improper purpose of securing an advantage over its opponent by depriving the opponent of its counsel of choice, who is intimately familiar with the litigation, and forcing it either to spend additional funds for new counsel or to concede defeat because of financial inability to retain new counsel[]"). Because they "impinge[] on a party's right to employ a lawyer of choice," disqualification motions "are often interposed for tactical purposes," *Alexander v. Tandem Staffing Sols., Inc.*, 881 So. 2d 607, 609 (Fla. 4th DCA 2004), which is another reason why they "are generally viewed with skepticism[,]" *id.* at 608. *See also Yang Enters., Inc. v. Georgalis*, 988 So. 2d 1180, 1183 (Fla. 1st DCA 2008). Beyond their disruptive nature and strategic misuse, the "disqualification of a party's chosen counsel is a harsh sanction and 'an extraordinary remedy' which should be resorted to sparingly." *Lee*, 714 So. 2d at 612 (quotation omitted).

Even if a basis for disqualification exists in this case (which appears dubious given the exceptionally thin basis for the disqualification order, which made no findings of fact), the motion to disqualify Global Lab Partners' in-house counsel was dilatory and not reasonably prompt. Because disqualification is an extraordinary remedy, it must be sought with "'reasonable promptness . . . to prevent . . . using the motion as a tool to deprive [the movant's] opponent of counsel of his choice after completing substantial preparation of the case.'" *Id.* (quoting *Transmark,*

*U.S.A. v. State, Dep't of Ins.,* 631 So. 2d 1112, 1116 (Fla. 1st DCA 1994)). The apparent strategic use of the motion to disqualify, and its dilatory filing eight months after the movants knew or should have known of the purported basis for disqualification, is enough to establish a waiver. *See Transmark*, 631 So. 2d at 1116 ("Transmark did not raise the question of conflict until more than ten months had elapsed and until after the Receiver had already paid approximately two million dollars in legal fees to its two outside lawyers. Transmark effectively waived its right to seek disqualification in failing to timely file its motion."). Although discovery of the magnitude in *Transmark* (a *huge* case) has not been done in this case, the principle remains the same: waiver is justified when the motion for disqualification is dilatory and an apparent attempt to secure "an advantage over [an] opponent by depriving the opponent of its counsel of choice." *Lee*, 714 So. 2d at 612.

Buttressing that disqualification is unjustified in this case is that no relief, other than disqualification of in-house counsel as litigation counsel, has been sought. It is undisputed that disqualified counsel can testify at trial and collaborate with the company's new defense counsel without restrictions; no order has been entered to prevent disqualified counsel from sharing any purported confidences. Indeed, no objection has been raised to disqualified counsel acting as appellate counsel for Global Lab Partners in this case, i.e., the same one in which he was disqualified! Disqualified counsel prepared the appellate briefs and argued the case without restrictions on his sharing or use of confidential information. In short, the disqualification order is a paper tiger, one that fails to serve any legitimate interest of the movants but is extremely prejudicial to Global Lab Partners. Whatever presumed prejudice to the movants that exists is marginal at best under the circumstances and merely serves to show that the dilatory motion to disqualify served one purpose: to secure a litigation advantage. Disqualifying counsel under these circumstances is reversible error.

———————————————

Richard M. Beckish and Arthur Fletcher, Pensacola, for Appellants.

Trevor A. Thompson of Clark Partington, Tallahassee; Jeremy C. Branning of Clark Partington, Pensacola, for Appellees.