458 So.2d 884 (1984)
PREFERRED TITLE SERVICES, INC., Appellant,
v.
SEVEN SEAS RESORT CONDOMINIUM, INC., et al., Appellees.
No. 83-1641.
District Court of Appeal of Florida, Fifth District.
November 15, 1984.
*885 R. Lee Dorough of Whitaker & Koepke, Chtd., Orlando, for appellant.
Jeffrey C. Sweet of Fink, Loucks, Sweet & Voges, Daytona Beach, for appellees.
COWART, Judge.
This case involves the propriety of a title insurance company receiving payment for services in preparing legal documents when no title insurance policy is issued.
The two appellee corporations (vendors) are the owner, developer, manager and vendor of time-share condominiums. Appellant (insurer) is a land title insurance company. The insurer filed a complaint in five counts against the vendors. Count one, for breach of contract, alleges that the parties had agreed (1) that the insurer would issue title insurance to each vendee of the vendors' time-share units, (2) that the vendors would pay the insurer $75 as a title insurance premium per single unit plus $25 for each additional unit purchased by the same vendee, (3) that the vendors agreed to pay the insurer $75 as a cancellation fee in cases where the vendees cancelled after the insurer performed "the necessary work to provide the title insurance," (4) that the vendors paid the insurer for every title insurance policy actually issued but (5) that the vendor breached the agreement by failing to pay the insurer the cancellation fees as agreed. "The necessary work to provide the title insurance" is alleged to consist of (a) examination of title, (b) examination of deeds, notes and mortgages executed by the vendors and vendees, and (c) committing the insurer to vendees to issue title policies. Count two alleges that the vendors converted certain files from the insurer which files contained documents delivered by the vendors to the insurer apparently for examination as the basis for issuance of title insurance and legal documents which the insurer had prepared "solely for the purpose of issuing title insurance." The damages sought for the alleged conversion of the documents is for work performed by the insurer for which the insurer has not received compensation by way of premiums or cancellation fees. Count three alleges the insurer is entitled to damages in quantum meruit for the reasonable value of certain services rendered in researching and examining titles and in preparing "necessary title papers." Count four alleges that if there is found to be no agreement between the parties the insurer is entitled to damages on the theory that the vendor has been unjustly enriched by receiving the benefit of "valuable services" rendered by the insurer which services enabled the vendors "to sell, convey and otherwise complete their contractual relations with purchasers of the time-share units." Count five is an action under section 812.035, Florida Statutes, for triple damages, punitive damages, attorney's fees, etc., on the basis of the facts alleged in count two as constituting conversion or theft of property of the insurer. The trial court dismissed the insurer's second amended complaint apparently on the basis that, in substance, the vendor is seeking to collect for activities which *886 constitute the unauthorized practice of law. The insurer appeals.
Of course, anyone can lawfully sell paper or mere forms of legal documents. However, the use of specialized legal knowledge to prepare specific documents, and the providing of such prepared documents for use by others, with the express or implied representation that such documents are legal and effective and proper to create or document and evidence, the exact and precise legal rights, duties and relationships desired or needed by the users is, essentially, one important facet or aspect of the practice of law.
The issuance of title insurance is a legitimate business and is regulated by section 627.7711  627.7865, Florida Statutes. The business of title insurance is accomplished by (1) examining evidence of the legal documents that make up an existing chain of title to a particular parcel of land, (2) evaluating the risk of known or potential defects in, or adverse claims against, the title, (3) issuing conditional commitments to assume the risk in the title, (4) examining legal documents, if any, necessary to convey the title, or lien interest, to be insured to the prospective insured and examining documents satisfying liens and land interests necessary to satisfy the conditions of the commitment and to the issuance of the proposed title policy, and (5) issuing a title policy insuring the title or lien interest of the insured, for which the insurer is entitled to charge a "risk premium" (§ 627.781, Fla. Stat.).
Under the current state of case law in Florida[1] title insurers are permitted to prepare deeds, mortgages, satisfactions and other documents affecting the legal title to be insured and perform other acts necessary to fulfill conditions described in commitments for title insurance issued by them. The preparation of these documents and other acts normally constitute the practice of law and would be unauthorized if not done as a mere necessary incident to honor a title insurance commitment and to issue a title policy or if a charge was made for such services separate and apart from the "regular title insurance premium" which the insurer is authorized to charge.
Section 627.781(2), Florida Statutes, which authorizes the "regular title insurance premium" to include the risk premium and a reasonable charge for other services rendered the insured as part of the title insurance transaction, does not permit the unauthorized practice of law nor does this statute authorize or permit an insurer to charge for services for preparation of legal title documents when no risk premium is charged. Title insurance companies are in the business of charging "regular title insurance premiums" for assuming certain risks in land titles. When no title insurance is issued, the title insurer assumes no title risks, no title insurance transaction is involved, and no insurance premium can be charged. The insurer can make no lawful charge for services incident to a title insurance transaction when there is no policy issued and no risks assumed and when, in the absence of a title insurance transaction, those services would constitute the practice of law.
While the complaint in this case is carefully worded to avoid directly stating that the work performed and services rendered for which it seeks compensation by payment of the $75 cancellation fees (count one), or on the theories of quantum meruit (count three) or unjust enrichment (count four), were the preparation of legal documents for use in title transactions in which title insurance did not issue, a fair reading of all of the allegations in the complaint supports the conclusion of the trial court that such are the ultimate facts alleged and that those acts constituted the unauthorized *887 practice of law for which the insurer cannot lawfully recover remuneration.
This result cannot be avoided or circumvented by suing in an action for conversion (count two), or for statutory damages for theft (count five) of the paper or forms involved in the preparation of the legal documents. The same legal drafting services that takes paper or legal forms and prepares or completes them in order to create legal documents establishing legal obligations and duties and relationships relating to specific persons and property, by virtue of the magic of medieval legal property concepts, also converts that paper and those forms into choses in action and corporal hereditaments owned by the parties to the resulting executed legal documents and the paper in those documents is no longer personal property subject to conversion or theft from the draftsman or scrivener. If one cannot lawfully charge for ("valuable") legal services involved in the creation of legal documents ("title papers") provided to and used by others, one cannot recover, or charge for, the paper used.
AFFIRMED.
DAUKSCH, J., concurs specially with opinion.
FRANK D. UPCHURCH, Jr., J., concurs in result only.
DAUKSCH, Judge, concurring specially:
I agree with the majority opinion as it applies to this case. I write only to say that, given differently worded allegations, a title company would have a cause of action to recover under a similar contract. For example, had the insurer done work for the vendor, under contract, to insure the title for vendor or others and then after issuance of the policy the vendor refused to pay then, of course, a cause of action would arise. There are other situations, I am sure, which also would entitle the insurer to sue; each case must be closely analyzed on its facts.
NOTES
[1] Cooperman v. West Coast Title Company, 75 So.2d 818 (Fla. 1954); The Florida Bar v. Columbia Title of Florida, 197 So.2d 3 (Fla. 1967); The Florida Bar v. McPhee, 195 So.2d 552 (Fla. 1967). See generally, Annot., "Title examination activities  Illegal Practice of Law," 85 A.L.R.2d 184 (1962).