611 So.2d 85 (1992)
Victoria Love BARTHOLOMEW, individually, and Victoria Love Bartholomew, on behalf of The Bartholomew Corporation, Petitioner,
v.
Joseph M. BARTHOLOMEW, Leo Bartholomew, Smith Barney Harris Upham & Company, Inc., Brandon Pawn Mart, Inc., and The Bartholomew Corporation, Respondents.
No. 92-02578.
District Court of Appeal of Florida, Second District.
December 30, 1992.
*86 Paul B. Johnson of Johnson & Johnson, Tampa, for petitioner.
James M. Landis, David H. Runyan and Frances H. Toomey of Foley & Lardner, Tampa, for respondents Joseph M. Bartholomew and The Bartholomew Corp.
DANAHY, Acting Chief Judge.
Victoria Bartholomew petitions this court for a writ of certiorari to review an order of the circuit court which disqualifies the law firm she has retained to represent her interests in a shareholder derivative action. We grant the petition.
Ms. Bartholomew's complaint names several defendants including her former husband Joseph Bartholomew. It is alleged that Mr. Bartholomew removed assets from the family-owned Bartholomew Corporation for his own benefit or for the benefit of a second corporation, Brandon Pawn Mart, Inc. Ms. Bartholomew is represented by the Tampa law firm Johnson and Johnson; one partner, Paul B. Johnson, is her uncle. In an affidavit submitted to the trial court, Joseph Bartholomew alleged that he retained the same firm to represent the Bartholomew Corporation in conjunction with a 1991 sale of assets to Florida Cash America, Inc. (The proceeds from this sale are among the corporate assets Mr. Bartholomew is accused of diverting.) A corporate check was issued to Paul B. Johnson for his services in that transaction, though Mr. Johnson now takes the position that he represented Ms. Bartholomew's interests only.
Our supreme court recently addressed the issue of disqualification of opposing counsel. In State Farm Mutual Automobile Insurance Co. v. K.A.W., 575 So.2d 630 (Fla. 1991), the court established a two-pronged test for the party seeking disqualification. First, that party must show "that ... an attorney-client relationship existed [between the movant and the attorney or firm], thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship." 575 So.2d at 633. Second, "the matter in which the [lawyer or] firm subsequently represented the interest adverse to the former client [must be] the same or substantially related to the matter in which it represented the former client." Id.
When we consider the testimony and exhibits actually presented below, as opposed to allegations made in the various pleadings, the evidence that the Johnson firm represented Mr. Bartholomew and/or the corporation is scant. Initially, we note that Mr. Bartholomew's affidavit indicates that "privileged communications were made to Robert E. Johnson during the course of the attorney-client relationship." No mention is made of Paul B. Johnson.[1] Robert E. Johnson, who is also a partner in the firm, testified that he had never represented Mr. Bartholomew in any capacity; Mr. Bartholomew's own testimony offered little more than the fact he had spoken with Robert Johnson "[s]everal times on the golf course" during which time "I felt ... freely [sic] to talk just business in general." We recognize that "the test for determining the existence of this fiduciary relationship is a subjective one and `hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice.'" Green v. Montgomery County, Ala., 784 F. Supp. 841, 845-6 (M.D.Ala. 1992) (citation omitted). However, "[t]his subjective belief must ... be a reasonable one." Id. We find Mr. Bartholomew's testimony wholly insufficient to establish the existence *87 of an attorney-client relationship between himself or the corporation and Robert Johnson.
We turn, therefore, to the dealings between Mr. Bartholomew and the Johnson firm's other partner, Paul B. Johnson. The trial court appears to have considered the 1991 payment to Paul Johnson by corporate check a dispositive factor in its decision to disqualify the firm. However, the testimony before the circuit court indicates that both Mr. and Mrs. Bartholomew were in the habit of paying debts from the corporate account; the check was, in fact, signed by the petitioner. Paul Johnson insisted that his only role in the transaction was to protect the rights of Mrs. Bartholomew, who at the time was also contemplating dissolution of her marriage. Mr. Bartholomew and the corporation were represented by attorney Mark P. Kelly, and the work performed by Paul Johnson consisted largely of an exchange of sale documents with Kelly in which Johnson suggested various modifications. Notably, in some correspondence between the two attorneys the parties are described as "your client" and "my client," indicating separateness of interests. Moreover, Paul Johnson also took steps adverse to Mr. Bartholomew in connection with the Bartholomews' separation, such as insisting that he vacate the marital residence. Again, we find the evidence insufficient to establish a professional relationship between the respondents and the Johnson firm, or even a reasonable basis for Mr. Bartholomew to conclude such a relationship existed.[2]
Even if we were to find the existence of an attorney-client relationship, respondents would still fail to satisfy the second prong of the K.A.W. test for disqualification. Although they point out that the very assets Mr. Bartholomew is now accused of diverting are the proceeds from the 1991 sale to Florida Cash America, this argument mixes apples and oranges. It is one thing to have acquired assets with a lawyer's assistance, and quite another to have dissipated those assets once acquired, as is alleged in petitioner's complaint. Under these circumstances the disqualification of petitioner's counsel was an unwarranted sanction and therefore a departure from the essential requirements of law. Accordingly, we grant the petition for writ of certiorari, quash the order under review, and remand this case to the circuit court for further proceedings consistent with this opinion.
Petition granted.
CAMPBELL and THREADGILL, JJ., concur.
NOTES
[1] The affidavit does refer to a third attorney, Paul Duval Johnson. Although not a member of the firm Johnson and Johnson, this attorney does appear to have had some involvement in the early stages of this case. With the consent of all parties Paul Duval Johnson withdrew as counsel for petitioner.
[2] In their response to the petition for certiorari, respondents describe much of the hearing testimony as "conclusory statements by an attorney which cannot be used to rebut the affidavit and testimony of Mr. Bartholomew." Many courts, particularly the Fourth District Court of Appeal, have expressed strong displeasure at attorneys who offer argument disguised as fact. "If the advocate wishes to establish a fact, he must provide sworn testimony through witnesses other than himself or a stipulation to which his opponent agrees." Leon Shaffer Golnick Advertising, Inc. v. Cedar, 423 So.2d 1015, 1017 (Fla. 4th DCA 1982). A somewhat more lenient approach was taken in Centennial Insurance Co. v. Fulton, 532 So.2d 1329, 1331 (Fla. 3d DCA 1988): "Obviously a lawyer's unsworn statement cannot overcome actual testimony to the contrary. In this case, however, there was neither such evidence nor even any argument which challenged the accuracy of the attorney's representation."

We find the present case distinguishable. First of all, both of the attorneys Johnson were describing their own activities (or lack of same) in connection with the case and parties. At the May 26 hearing on the motion to disqualify, no objection was lodged to either partner providing information as "officers of the court," and respondents' counsel took the opportunity to cross-examine Paul Johnson. Only after the hearing was continued to June 1 did counsel belatedly describe as improper "a narrative by Mr. Johnson that's supposed to be treated as testimony." At this juncture Paul Johnson stated, "I'm glad to be sworn." No oath was administered, the trial court made no express ruling on the admissibility of his representations, and respondents' counsel made no further comment. Secondly, additional evidence, such as petitioner's contention that she paid personal debts by corporate check, was "proffered" without objection after counsel first announced that he was "prepared today to present the testimony of Victoria Bartholomew." In our view, respondents have waived any objection that these factual assertions are not properly considered part of the record.