675 So.2d 106 (1996)
THE FLORIDA BAR, Complainant,
v.
Roy BEACH, Respondent.
No. 85005.
Supreme Court of Florida.
April 25, 1996.
Rehearing Denied June 14, 1996.
*107 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee; and John B. Root, Jr., Bar Counsel, Jan K. Wichrowski, Co-Bar Counsel and Rose Ann Degangi, Co-Bar Counsel, Orlando, for Complainant.
Roy L. Beach, Orlando, pro se.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Roy Beach.[1] We have jurisdiction. Art. V, § 15, Fla. Const.

FACTS
The alleged violations in this case concern Beach's legal practices during 1993 when he provided services as an independent contractor to King and King Paralegals (King and King). King and King was owned and operated by Kenneth and Cathy King. As the Kings' supervising attorney, Beach discussed their clients' legal issues, reviewed pleadings and other documents prepared by them, and offered thirty-minute consultations to Kings' customers. King and King paid Beach a $75 flat rate for his services rendered in each case.
On June 29, 1993, Margery Rose contracted with King and King to prepare legal documents, which would be reviewed by Beach. The contract also provided that Beach would have a thirty-minute consultation with Ms. Rose, but would not represent her unless she entered into a separate agreement with him. Pursuant to the contract, Ms. Rose paid King and King $675 as a nonrefundable retainer to prepare the paperwork, conduct research and additional interviews, and for attorney time. During her relationship with King and King, Ms. Rose received advice and guidance from Kenneth King regarding the various legal actions she considered pursuing. The guidance provided by King was the direct product of legal advice King had received from Beach.
Approximately two weeks after hiring the Kings, Ms. Rose requested they cease working on her case and provide her with the documents they had prepared up to that point. She also requested but was denied a *108 refund. Ms. Rose then filed a pro se action seeking a refund and delivery of her file documents to determine whether the legal services she initially requested had been performed. The Kings defended that action pro se. After mediating the disagreement, the parties entered into a stipulation which provided the Kings would deliver the documents within seventy-two hours and pay Ms. Rose $47 on or before October 21, 1993. Subsequently, a dispute arose as to whether the Kings had exhibited good faith in attempting delivery of the documents within the required time period, and final judgment was entered awarding Ms. Rose $675 because of the Kings' breach of the stipulation.
Ms. Rose filed a grievance with The Florida Bar wherein she complained that Roy Beach had failed to meet with her or contact her pursuant to the King and King contract. Ms. Rose also stated in her complaint that the Kings had tried twice to deliver her documents to her former husband prior to actually delivering them to him at his place of business. Based upon his belief that Ms. Rose's statement was contradictory to her prior position that the Kings had violated the mediation agreement, Beach filed a motion on behalf of the Kings to vacate the final judgment.[2] The court granted this motion and set the matter for a new final hearing but, prior to that date, Ms. Rose dismissed her action.

BAR PROCEEDINGS
The Florida Bar filed a complaint against Roy Beach alleging violation of Rules Regulating The Florida Bar 4-5.4 (sharing legal fees with a nonlawyer), 4-5.5 (assisting a person who is not a member of the Bar to perform activities that constitute the practice of law), 4-1.7 (representing a client when the representation would be directly adverse to the interests of another client), 4-1.8 (using information relating to the representation of a client to the disadvantage of the client), and 4-1.9 (representing another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of a former client).

REFEREE'S FINDINGS AND RECOMMENDATIONS
After a hearing, the referee recommended that Beach be found guilty of violating rules 4-5.4 and 4-5.5 and that he be suspended from the practice of law for three months with automatic reinstatement at the end of the suspension period and all costs of the proceedings be charged to the defendant. The referee found for Beach on the other charges. In his recommendation for discipline, the referee considered that Beach had a prior disciplinary suspension for twenty-eight days. Beach challenges the referee's findings and recommendations, contending that they are not supported by the record. Conversely, The Florida Bar challenges the referee's recommendations as to those issues found adversely to it and contends that a suspension requiring proof of rehabilitation is more appropriate given Beach's disciplinary history and the circumstances of the ethical violations at issue here.

OUR REVIEW
In Bar proceedings, a referee's findings of fact are presumed correct and this Court will not reweigh the evidence and substitute its judgment for that of the referee as long as the findings are not clearly erroneous or lacking in evidentiary support. Florida Bar v. Seldin, 526 So.2d 41, 43-44 (Fla.1988); Florida Bar v. McKenzie, 442 So.2d 934, 934 (Fla.1983). The party seeking to challenge the referee's findings of fact bears the burden of showing that the referee's findings are clearly erroneous or unsupported by the record. Florida Bar v. Neu, 597 So.2d 266, 268 (Fla.1992); Florida Bar v. McClure, 575 So.2d 176, 177 (Fla.1991). However, a referee's legal conclusions are subject to broader review by this Court than are findings of fact. Florida Bar In re Inglis, 471 So.2d 38, 41 (Fla.1985).
In this case, the referee's finding that Beach assisted Mr. King in the unlicensed practice of law is supported by the record. Beach never met with or consulted *109 Ms. Rose. Rather, he met with Mr. King who passed on Beach's advice to Ms. Rose concerning what legal action she should pursue. While Beach did discuss Ms. Rose's case with Mr. King, he never monitored or participated in the subsequent discussions that Mr. King had with Ms. Rose concerning her legal problems. At the discipline hearing, Beach inadvertently explained the ethical problem with his conduct here:
[W]hat I would do is, Mr. King would come in to me and say, Roy, this lady, she wants a change of custody. This is what she told me concerning the facts of it. What do we need to do? And I said okay; you need to prepare this; ask her some more information about this to maybe beef up the petition.... And then he would go back to Ms. Rose. And he would say, okay, Ms. Rose, you need this document, this document, this document. So he did not give any independent advice of his own, but he was a conduit of me saying what was needed.
Beach improperly allowed Mr. King to act as his conduit for giving legal advice by obtaining and relaying, without supervision, case-specific information to persons whom Beach never actually met or consulted. Cf. Florida Bar v. Brumbaugh, 355 So.2d 1186, 1194 (Fla.1978) (holding that non-lawyer proprietor of "secretarial service" overstepped bounds and engaged in unauthorized practice of law by advising clients of various legal remedies available to them, recommending appropriate legal forms to file and assisting in preparation and filing of forms). Consequently, we find the referee's conclusions, that Beach (1) assisted Mr. King in the unauthorized practice of law in violation of rule 4-5.5 and (2) shared a legal fee with a nonlawyer in violation of rule 4-5.4, to be supported by the record in this case.
The Bar contends the referee's legal conclusion that Beach triggered no conflict of interest by funneling legal advice to Ms. Rose through King and King, and his subsequent representation of King and King in the civil action against Ms. Rose, was erroneous. The Bar argues that Ms. Rose became Beach's client, whether he was employed by her or not, when she disclosed confidential information to King who passed it on to Beach while seeking legal advice on Ms. Rose's behalf.
In Bartholomew v. Bartholomew, 611 So.2d 85 (Fla. 2d DCA 1992), the Second District noted the test for determining the existence of an attorney-client relationship:
"[T]he test for determining the existence of this fiduciary relationship is a subjective one and `hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice.'" Green v. Montgomery County, Ala., 784 F.Supp. 841, 845-46 (M.D.Ala.1992) (citation omitted). However, "this subjective belief must ... be a reasonable one." Id.

Id. at 86. In this case, Ms. Rose specifically sought out assistance from a paralegal instead of an attorney. She entered into a contract with King and King and not with Beach. Although the contract stated that Beach would review her paperwork and give her a thirty-minute consultation, it also stated that she would not be represented by him.[3] Ms. Rose dealt exclusively with Mr. King and she never even met with Beach. In view of these facts, we find the record supports the referee's conclusion that Beach did not establish an attorney-client relationship with Ms. Rose and consequently, was not guilty of representing clients with conflicting interests in violation of rules 4-1.7-4-1.9. Despite our conclusion, however, we acknowledge that a close question is presented and caution lawyers that they should be very careful in placing themselves in such difficult positions.
Finally, we address the Bar's contention that a ninety-one-day suspension requiring proof of rehabilitation is a more appropriate sanction, even if we do not find there was a conflict of interest, because any lesser sanction will not deter Beach from altering his *110 relationship with King and King in the future. On the other hand, Beach argues that the recommended sanction is too severe and the referee failed to find several mitigating circumstances in this case. Beach maintains that (1) he has a small practice with no associates, (2) several of his clients who are indigent would be unable to afford an attorney to handle their case if he were suspended for ninety days, and (3) he and Mr. King "undertook the program complained of by the Bar for the purposes of enhancing public access to the court system for those who could not afford to hire an attorney."
The sanction resulting from a Bar disciplinary action must serve three purposes: The sanction must be fair to society; the sanction must be fair to the attorney; and the sanction must be severe enough to deter other attorneys from similar misconduct. Florida Bar v. Neu, 597 So.2d 266, 269 (Fla.1992). This Court's review of a referee's recommendations as to disciplinary measures is broader than that afforded to factual findings because the ultimate responsibility to order an appropriate sanction rests with us. Florida Bar v. Rue, 643 So.2d 1080, 1082 (Fla.1994).
We find the referee's recommendation of a ninety-day suspension with automatic reinstatement and imposition of costs adequately fulfills the three purposes of disciplinary sanction set out in Neu. We believe the Bar's assumption that Beach, despite being sanctioned, will continue to violate the ethical rules through his relationship with King and King as a "supervising attorney" is unfounded. There is no evidence in the record that his violation of the rules was willful or deliberate; nor is there any evidence that he intends to disregard the authority of this Court. On the other hand, the mitigating factors cited by Beach, while appropriate for consideration, do not warrant a lesser sanction than that recommended by the referee. Thus, we approve the referee's findings of fact, determinations of guilt, and recommended discipline.

CONCLUSION
Accordingly, Beach is hereby suspended from the practice of law for ninety days with automatic reinstatement at the end of the suspension period. The suspension shall be effective thirty days from the filing of this opinion so that Beach can close out his practice and protect the interests of existing clients. If Beach notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Beach shall accept no new business from the date this opinion is published until the suspension is completed. Judgment for costs in the amount of $1,745.63 is entered in favor of The Florida Bar and against Roy Beach, for which sum let execution issue.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Beach was admitted to the Bar on October 31, 1980, and has one prior disciplinary conviction which resulted in a 28-day suspension on March 31, 1994. Florida Bar v. Beach, 637 So.2d 237 (Fla.1994).
[2] As the Kings' supervising attorney, Beach had also received Ms. Rose's paperwork which was the subject matter of her initial civil suit against King and King.
[3] The referee further notes in his report that "[a]lthough Ms. Rose testified she considered Beach to be her attorney because of King telling her Beach was reviewing her case, she also knew she had never entered into a separate agreement with Beach for representation as called for in the contract with King and King."