[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16034
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 22, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 08-00058-CV-ORL-22,
BKCY No. 03-BK-08035-KSJ

IN RE:

LENTEK INTERNATIONAL, INC.,

                                                          Debtor.

_____

MICHAEL MOECKER, as liquidating
trustee for Lentek International, Inc.,

                                                          Plaintiff-Appellant,

versus

GREENSPOON, MARDER, HIRSCHFELD, RAFKIN,
ROSS, BERGER & ABRAMS ANTON, P.A.,
GREGORY J. BLODIG,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

( September 22, 2009)

Before BARKETT, PRYOR and COX, Circuit Judges.

PER CURIAM:

Michael Moecker ("the Trustee"), the liquidating trustee of Debtor Lentek International, Inc. ("Lentek" or "the Debtor"), appeals the summary judgment granted to the law firm of Greenspoon, Marder, Hirschfield, Rafkin, Ross, Berger & Abrams Anton, P.A. ("Greenspoon") and Blodig (collectively, "Defendants") by the bankruptcy court. Moecker also challenges interlocutory orders of the bankruptcy court upon which the summary judgment was based. We find no error in the bankruptcy court's decisions and affirm the judgment.

## I. BACKGROUND

Moecker brought two adversary actions in the bankruptcy court. The first of these actions sought to recoup from Greenspoon an allegedly fraudulent conveyance from Lentek for services that allegedly were performed by Greenspoon for Luis Lentine (a Lentek officer) personally, rather than for the Debtor. The second adversary action alleged that Greenspoon and Blodig (an attorney at the Greenspoon firm) had committed malpractice and breached their fiduciary duties to Lentek by representing both Lentine and Lentek, who had conflicting interests, in a stock purchase and sale transaction. The bankruptcy court consolidated the actions for

purposes of resolving the common factual issues, then held an evidentiary hearing on the question of whether Greenspoon and Blodig represented Lentek.

At the hearing, Lentine and Durek (Lentek's CEO at the time of the stock transaction) testified that they did not believe that Greenspoon or Blodig had represented Lentek in the transaction at issue. Both men disclaimed hiring an attorney to represent Lentek for that purpose. Other witnesses, who were not Lentek officers or directors, testified that they thought Lentek had been represented by Greenspoon. And, Moecker presented some documentary evidence from which the inference could be drawn that the Defendants had represented Lentek.

After the hearing, the bankruptcy court issued lengthy Findings of Fact and Conclusions of Law and a more succinct order that concluded: "The defendants, the law firm of Greenspoon, Marder, Hirschfeld, Rafkin, Ross, Berger & Abrams Anton, P.A., and Gregory Blodig, individually, did not establish an attorney-client relationship with the corporate debtor, Lentek International, Inc." (R.8-12-9 at 2.) Thereafter, Greenspoon and Blodig moved for summary judgment in the second adversary action. The bankruptcy court granted the motion and entered judgment for the Defendants.

Moecker appealed to the district court, arguing that the bankruptcy court erred in finding no attorney-client relationship, and asking that the judgment be vacated.

3

In a comprehensive order that analyzed Moecker's legal and factual arguments, the district court affirmed the bankruptcy court in all respects.

Moecker now appeals to this court, challenging the judgment in the second adversary proceeding and the orders finding no attorney-client relationship upon which the final judgment was based.

## II. ISSUE ON APPEAL AND CONTENTIONS OF THE PARTIES

This appeal presents one question: whether the bankruptcy court correctly determined that no attorney-client relationship existed between the Debtor and Defendants.

Moecker argues, as he did in the district court, that the bankruptcy court erred by applying an incorrect legal standard to determine whether an attorney-client relationship was formed. Specifically, he argues that the bankruptcy court erred when it held that Florida recognizes only one test for whether an attorney-client relationship was formed (namely, the reasonable subjective belief of the client that the relationship had been formed).[1]

---

[1]Arguing that there is ambiguity in Florida law regarding the proper test for under what circumstances an attorney-client relationship is formed, Moecker has moved this court to certify questions to the Florida Supreme Court. We do not perceive the ambiguity Moecker does. And, as discussed below, even if we did perceive ambiguity, its resolution would not be outcome-determinative in this case. Therefore, we DENY the motion.

And, Moecker argues that, even if the bankruptcy court applied the correct legal standard, it erred by overlooking some evidence and misconstruing other evidence, committing clear error in the factual findings that led to its conclusion that no attorney-client relationship existed. To support that argument, Moecker argues that the evidence demonstrated that, even if the Debtor had a belief that no attorney-client relationship existed, that belief was not reasonable.

Defendants respond that the bankruptcy court correctly applied the proper test under Florida law to determine whether an attorney-client relationship existed.

### III. STANDARDS OF REVIEW

"As the 'second court of review of a bankruptcy court's judgment,' we independently examine the factual and legal determinations of the bankruptcy court and employ the same standards of review as the district court." *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 698 (11th Cir. 2005) (*quoting In re Issac Leaseco, Inc.*, 389 F.3d 1205, 1209 (11th Cir. 2004); *In re Club Assoc.*, 951 F.2d 1223, 1228 (11th Cir. 1992)). "Like the district court, we review the bankruptcy court's findings of fact for clear error and the court's conclusions of law and mixed questions of law and fact *de novo*." *In re Cox*, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007) (*citing In re Calvert*, 907 F.2d 1069, 1071 (11th Cir.1990)). A factual finding is not clearly erroneous unless "this court, after reviewing all of the evidence, [is] left with the definite and

firm conviction that a mistake has been committed." *In re Int'l Admin. Servs., Inc.*, 408 F.3d at 698 (citation omitted).

## IV. DISCUSSION

We see no merit in Moecker's arguments. The bankruptcy court correctly applied existing Florida law to determine whether an attorney-client relationship exists. As we stated in *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250 (11th Cir. 2004), the test Florida courts have used to determine if an attorney-client relationship exists is: (1) the putative client consults with an attorney and, subsequently, (2) the client has a reasonable subjective belief "that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice." *Id.* at 1281 (*quoting Bartholomew v. Bartholomew*, 611 So. 2d 85, 86 (Fla. Dist. Ct. App. 1992) (internal quotations, emphasis, and citation omitted)). There is no evidence in the record that anyone acting on behalf of the Debtor corporation consulted with Greenspoon or Blodig seeking legal advice for the Debtor. And, the bankruptcy court found that the weight of the evidence, including the testimony of Lentine and Durek (the only witnesses who had first-hand knowledge of the intent of the Debtor corporation) was that the Debtor held no belief that it had an attorney-client relationship with the Defendants. Having reviewed the record, we are not left with the definite and firm conviction that a mistake has been committed by the bankruptcy

court. While there was evidence that the Debtor may have had an attorney-client relationship with the Defendants, substantial evidence supports the bankruptcy court's finding contrary, and we find no clear error.

Moecker argues that the reasonable subjective belief of the client test should not be the only test available to determine whether an attorney-client relationship exists. But, as the bankruptcy court and district court recognized, Moecker cites no authority for his assertion that, to satisfy the attorney-client relationship element of a malpractice claim under Florida law, the attorney must only render legal services to the putative client. In fact, in *Jackson*, we held to the contrary. *Id.* at 1281 n.29 ("[I]t is the belief of the putative client and not the lawyer's actions that determines whether a lawyer-client relationship has developed.") (*citing Dean v. Dean*, 607 So. 2d 494, 496-97 (Fla. Dist. Ct. App. 1992)). Moecker's alternative argument that a putative client cannot successfully disclaim an attorney-client relationship unless his belief that no such relationship exists is reasonable stretches existing Florida law and, in any event, does not change the outcome of this case. First, it is not clear that Moecker made this argument in the bankruptcy court. In any event, after considering testimony and documentary evidence, the bankruptcy court found that Lentine and Durek, the only representatives of the Debtor, did not believe that the Debtor had an attorney-client relationship with the Defendants. And, by discussing other evidence

7

consistent with Lentine's and Durek's testimony (such as the fact that Blodig did not act as if he represented the corporation in the stock transaction), the bankruptcy court implicitly found that belief was reasonable. Sitting in review, the district court found that the bankruptcy court's finding was supported by both witness testimony and other evidence and that, even under the test Moecker proposes, he does not succeed. We agree. The evidence supports a finding that the Debtor's belief that no attorney-client relationship existed was reasonable.

## V. CONCLUSION

For the foregoing reasons, we find no error in the bankruptcy court's conclusion that no attorney-client relationship existed between the Debtor and Defendants and affirm the summary judgment for Greenspoon and Blodig.

AFFIRMED.

8