DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JBJ INVESTMENT OF SOUTH FLORIDA, INC.,** a Florida corporation,
Appellant,

v.

**SOUTHERN TITLE GROUP, INC.,** a Florida corporation, **THE BURGESS LAW FIRM, P.A.,** a Florida professional corporation, and **FREDERICK BURGESS,** an individual,
Appellees.

Nos. 4D16-1925 & 4D16-3974

[ July 5, 2018 ]

Consolidated appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John B. Bowman, Judge; L.T. Case No. CACE14024230 (02).

Robin F. Hazel of Hazel Law, P.A., Pembroke Pines, for appellant.

Melinda S. Thornton and Kathryn L. Ender of Cole, Scott & Kissane, P.A., Miami, for appellees.

TAYLOR, J.

JBJ Investment of South Florida ("JBJ") appeals a final summary judgment entered in favor of Frederick Burgess, Esq., and the Burgess Law Firm, P.A., (collectively the "Burgess Defendants") on JBJ's claims for legal malpractice. The Burgess Defendants appeal the trial court's order denying their motion for attorney's fees pursuant to a proposal for settlement. We reverse the summary judgment in favor of the Burgess Defendants, rendering it unnecessary for us to reach the issue concerning validity of the proposal for settlement.

### *Facts*

JBJ filed the underlying lawsuit against Southern Title for negligence and against the Burgess Defendants for legal malpractice. The gravamen of the claim against the Burgess Defendants is that they prepared a mortgage containing incorrect legal descriptions of properties that were to secure a loan made by JBJ. The summary judgment evidence established

the following facts.

Incel Hernandez is the principal and sole employee of JBJ. One of JBJ's business activities is to lend money for real estate transactions. Luis Sotero, a personal friend of Mr. Hernandez, would refer borrowers to Mr. Hernandez. Mr. Sotero informed Mr. Hernandez of the opportunity to lend money to the Maslanka family.[1]

In March 2011, JBJ agreed to loan $135,000 to the Maslanka family and its related family trusts. The loan was to be secured by a note and mortgage on five properties owned by the Maslanka family, including a commercial property in Osceola County known as the Modern Day Furniture Store. The Modern Day property was the most valuable of all the properties and was essential to JBJ's decision to make the loan.

The title agency handling the closing for the loan was Southern Title. JBJ decided to use Southern Title because one of its title agents, Ingrid Goenaga, was a friend of both Mr. Hernandez and Mr. Sotero.

Ms. Goenaga, who is not an attorney, performed title services and prepared customary documents in connection with the closing, such as the HUD statement and deeds. At some point, Ms. Goenaga was provided with the parcel identification numbers for the five properties that were to be used as collateral for the loan.

The summary judgment evidence is conflicting as to whether anyone on behalf of JBJ asked Ms. Goenaga to engage the services of a lawyer to work on the loan transaction. Ms. Goenaga testified that no agent or employee of JBJ specifically asked for a lawyer to work on the mortgage. By contrast, Mr. Hernandez testified that he told Ms. Goenaga he wanted an attorney to prepare and review all of the loan documents for accuracy.

In any event, it is undisputed that Ms. Goenaga hired the Burgess Defendants to prepare the note and mortgage. Mr. Hernandez gave his version of how Mr. Burgess became involved in the transaction: "I requested that I need an attorney. I requested that everything should be a hundred percent proof, and I told Southern Title that that's what I wanted and they are the ones who selected Burgess."

---

[1] Mr. Hernandez testified that he was the only person with "any authorization to do business" on behalf of JBJ, and that Mr. Sotero was not an employee or independent contractor of JBJ. Nevertheless, Mr. Sotero handled the communications regarding the loan with the title agency and the Maslanka family.

Ms. Goenaga testified that she sent the work to Mr. Burgess because she was a former employee of Mr. Burgess's law firm and they maintained a working relationship where he would engage her as a subcontractor to process his transactions. Ms. Goenaga explained that she would refer files to Mr. Burgess if "something legal" needed to be done, which in this case was preparing the mortgage and the note.

It is undisputed that Mr. Hernandez never met or communicated with Mr. Burgess. Mr. Hernandez admitted that there was no communication whatsoever between JBJ and Mr. Burgess on the issue of JBJ's expectations concerning Mr. Burgess's legal services. However, Mr. Hernandez claimed that JBJ "indirectly" hired Mr. Burgess, and that Ms. Goenaga communicated with Mr. Burgess on JBJ's behalf.[2]

The Burgess Defendants prepared the note and mortgage. The mortgage stated that it encumbered the property legally described in Exhibit "A." Exhibit "A" was attached to the mortgage and contained the legal descriptions of five properties. However, the Burgess Defendants did not prepare Exhibit "A." Instead, Southern Title prepared Exhibit "A" and the legal descriptions contained therein.

Ms. Goenaga testified that she did not send Mr. Burgess the list of the properties to be included in Exhibit "A." She explained that the extent of Mr. Burgess's involvement in the transaction was preparing the note and mortgage. Ms. Goenaga alone created the final list of encumbered properties. She did not consider the list of legal descriptions to be something that needed to be done by an attorney.

The loan transaction closed in March 2011, and the documents were recorded the next month. A payment of $1,350 was made to the Burgess Law Firm for "Attorney Fees/Doc Prep." The attorney's fee was debited against the loan funds at closing.

The borrowers eventually defaulted on the loan, prompting JBJ to initiate foreclosure proceedings in 2013. When JBJ started foreclosure proceedings, however, JBJ learned that Exhibit "A" to the mortgage

---

[2] At another point in his deposition, however, Mr. Hernandez seemed to admit that he did not have any conversations with anyone at Southern Title regarding his expectations for Mr. Burgess's legal work. Nonetheless, Mr. Hernandez emphasized that he expected "someone to look over [his] paperwork and make sure it was right." Mr. Hernandez explained: "I don't think I should [have to] tell anybody that they need to look over and make sure that things are right."

contained a duplicate legal description for one of the small properties and completely omitted the legal description of the Modern Day property, which was the most valuable property.

JBJ thereafter commenced the instant action against Southern Title and the Burgess Defendants, seeking to recover damages as a result of the erroneous legal descriptions in the mortgage. The Burgess defendants answered and raised as an affirmative defense that there was no attorney-client relationship.

The Burgess Defendants later moved for summary judgment, arguing in relevant part that: (1) there was no attorney-client relationship as a matter of law due to the "complete lack of communication and consultation" between JBJ and the Burgess Defendants; and (2) JBJ could not show that the Burgess Defendants' responsibilities included preparing Exhibit "A" to the mortgage.

The trial court granted the motion for summary judgment. For purposes of its ruling, the trial court assumed, for the sake of argument, that an attorney-client relationship existed, but concluded that the Burgess Defendants' role in the transaction did not include preparing the legal descriptions set forth in Exhibit "A."

Prior to the entry of final summary judgment, JBJ moved for rehearing or reconsideration and for leave to amend the complaint. The proposed amended complaint added an additional count against Mr. Burgess for legal malpractice.

The trial court entered a final summary judgment in favor of the Burgess Defendants. The trial court later entered an order denying the motion for rehearing and the motion for leave to amend the complaint.

Subsequently, the trial court found that the Burgess Defendants' proposal for settlement was not served in good faith, and entered an order denying the Burgess Defendants' entitlement to fees.

This consolidated appeal ensued.

### *JBJ's Arguments on Appeal from the Final Summary Judgment*

On appeal, JBJ argues that genuine issues of material fact remain regarding: (1) whether an attorney-client relationship existed where there was evidence that JBJ entrusted the closing agent to communicate with Mr. Burgess on behalf of JBJ; and (2) whether the scope of Mr. Burgess's

4

duties in preparing the note and mortgage encompassed the obligation to ensure the accuracy of the legal description of the properties that would be encumbered by the mortgage. We agree.

### *Standard of Review*

The standard of review for orders granting summary judgment is de novo. *Haber v. Deutsche Bank Nat'l Tr. Co.*, 81 So. 3d 565, 566 (Fla. 4th DCA 2012). A movant is entitled to summary judgment "if the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). "[T]he burden is upon the party moving for summary judgment to show conclusively the complete absence of any genuine issue of material fact." *Albelo v. S. Bell*, 682 So. 2d 1126, 1129 (Fla. 4th DCA 1996).

### *Elements of a Legal Malpractice Action*

A cause of action for legal malpractice has three elements: (1) the attorney's employment by the client; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence was the proximate cause of loss to the client. *R.S.B. Ventures, Inc. v. Berlowitz*, 211 So. 3d 259, 263 (Fla. 4th DCA 2017).

Here, we find that there were genuine issues of material fact remaining as to whether an attorney-client relationship existed and whether the Burgess Defendants neglected a reasonable duty.

### *Whether an Attorney-Client Relationship Existed?*

The test for determining the existence of an attorney-client relationship "is a subjective one and hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice." *Bartholomew v. Bartholomew*, 611 So. 2d 85, 86 (Fla. 2d DCA 1992) (citation and internal quotation marks omitted). This subjective belief must be reasonable. *Id.*

Under Florida law, an essential element of an attorney-client relationship is that there must be some sort of consultation between the lawyer and the putative client. For example, in *The Florida Bar v. Beach*, 675 So. 2d 106, 107–09 (Fla. 1996), the Florida Supreme Court held that an attorney-client relationship was not established where: (1) the putative client entered into a contract with a paralegal firm to prepare legal documents, which were to be reviewed by an attorney; (2) the contract

5

stated that the putative client would not be represented by the attorney unless she entered into a separate agreement with the attorney; and (3) the putative client never met with the attorney, though a paralegal passed on the attorney's advice concerning what legal action the putative client should pursue.

The Eleventh Circuit, applying Florida law, has stated that "[t]he subjective belief test is only applied *after* a putative client consults with an attorney, and is used to emphasize that, *following a consultation*, it is the belief of the putative client and not the lawyer's actions that determines whether a lawyer-client relationship has developed." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1281 n.29 (11th Cir. 2004). The Eleventh Circuit explained: "Requiring a subjective belief to be reasonable makes sense, since the subjective belief of a 'client' that he has retained a lawyer whom he has never consulted—or even spoken to—cannot be an objectively reasonable one." *Id.* The Eleventh Circuit interpreted *Beach* as standing for the proposition that "regardless of a putative client's subjective beliefs, there can be no attorney-client relationship when the client does not consult with the attorney, especially when there is no contact between them." *Id.* at 1282. Thus, according to the Eleventh Circuit, "an actual consultation with a lawyer" is a prerequisite to forming an attorney-client relationship. *Id.* at 1281 n.29.

Nonetheless, "[a]lthough it is natural to think of this fundamental element as a consultation conducted personally between a party in need of legal assistance and an attorney, there are a number of situations in which the requirement can be met even though the individual initiating the consultation does not himself require legal advice or services." George A. Locke, *Existence of Attorney-Client Relationship*, 48 Am. Jur. Proof of Facts 2d 525 (1987). A sufficient consultation occurs for purposes of establishing an attorney-client relationship where the person consulting the attorney "is, for example, the spouse, parent, doctor, or insurer of the person in need of the attorney's services and is acting with at least implied authority given by that person." *Id.* (footnotes omitted).

The consultation requirement can therefore be met when an agent of the client consults with an attorney on the client's behalf. *See In re McCall*, 08-02-00071-CV, 2002 WL 1341104, at *2 (Tex. App. June 20, 2002) ("Under the present facts, we believe that an attorney-client relationship existed by virtue of Dolores consulting Cotton Bledsoe in her capacity as Linda's agent."); *Clarke v. Ruffino*, 819 S.W.2d 947, 949–50 (Tex. App. 1991) (holding that an attorney-client relationship existed where the client paid the attorney for legal services in connection with a refinancing, even though the client never asked the attorney to represent him and all contact

6

was with the bank); *cf. In re Lentek Int'l, Inc.*, 346 Fed. App'x 430, 433 (11th Cir. 2009) (finding that no attorney-client relationship existed, but explaining that there was "no evidence in the record that *anyone acting on behalf of the Debtor corporation* consulted with Greenspoon or Blodig seeking legal advice for the Debtor") (emphasis added).

The threshold question in this case is whether there was an attorney-client relationship between JBJ and the Burgess Defendants.[3] Although JBJ never directly consulted or met with Mr. Burgess, the consultation requirement may be satisfied by an agent of the client. Here, the evidence viewed in the light most favorable to JBJ showed that: (1) JBJ wanted an attorney to prepare the loan documents and review them for accuracy; (2) JBJ's title agent, Ms. Goenaga, contacted Mr. Burgess on JBJ's behalf and hired him to prepare the note and mortgage; (3) Mr. Burgess prepared the note and mortgage; and (4) Mr. Burgess accepted a fee for his legal services. Thus, a reasonable view of the evidence is that a consultation occurred when Ms. Goenaga, as JBJ's title agent, hired Mr. Burgess and assigned him the task of preparing the note and mortgage.

Cases like *Jackson* and *Beach* are distinguishable because in those cases there was no evidence that someone acting as an agent of the client hired the lawyer to render legal services on behalf of the client. Unlike *Jackson,* this is not a case where Mr. Burgess had "literally no basis to know" that JBJ would consider him its attorney. 372 F.3d at 1282. Similarly, although the attorney in *Beach* gave legal advice to the putative client through a non-lawyer conduit, *Beach* is nonetheless distinguishable because there the client's agreement with the paralegal firm specifically stated that the client would not be represented by the attorney. 675 So. 2d at 109. Thus, in *Beach* it was clear that the client was not hiring the attorney through the paralegal firm. By contrast, in this case, Mr. Burgess was hired by JBJ's title agent, rendered legal services by preparing the note and mortgage, and billed for those services.

In short, a reasonable jury could find that an attorney-client relationship existed between JBJ and the Burgess Defendants by virtue of Ms. Goenaga consulting with Mr. Burgess in her capacity as JBJ's title agent and referring to him the work of preparing the note and mortgage.

---

[3] Although the trial court assumed for purposes of its summary judgment ruling that an attorney-client relationship existed between JBJ and the Burgess Defendants, the Burgess Defendants argue that summary judgment could be affirmed on the alternative basis that no attorney-client relationship existed. Thus, we find it necessary to address this issue.

### *Whether the Burgess Defendants Neglected a Reasonable Duty?*

The question therefore becomes whether there is a genuine issue of material fact concerning the scope of the Burgess Defendants' duties in preparing the note and mortgage.

Once an attorney-client relationship is established, "[a]n attorney may not neglect to perform the services which he agrees to perform or which by implication he agrees to perform when he accepts employment." *Atkin v. Tittle & Tittle*, 730 So. 2d 376, 378 (Fla. 3d DCA 1999) (citation, internal quotation marks, and brackets omitted). Thus, "[a]n attorney may *not* disregard matters that arise and reasonably signal potential legal problems," even if those matters do not fall precisely within the general rule governing the scope of an attorney's duties when representing a client in a real estate transaction. *Id.*

Here, Ms. Goenaga's testimony was insufficient to establish as a matter of law that the Burgess Defendants did not have a duty to review the legal descriptions of the properties. Certainly, Ms. Goenaga never asked the Burgess Defendants to prepare the legal descriptions of the properties to be encumbered by the mortgage, and never transmitted to Mr. Burgess the list of the properties to be included in Exhibit "A" to the mortgage. Ms. Goenaga explained that she alone created the final list of encumbered properties, and that she did not consider the list of legal descriptions to be something that needed to be done by an attorney.

Nonetheless, Ms. Goenaga's testimony as a title agent does not establish the standard of professional care applicable to a lawyer in this real estate transaction. On these facts, a reasonable jury could find that, once the Burgess Defendants undertook to prepare the mortgage, they agreed by implication to ensure that the mortgage encumbered the correct real estate. Even though the title agent agreed to prepare the legal descriptions, Mr. Burgess arguably had the ultimate responsibility to review that work product for accuracy where he was retained to prepare the mortgage and he charged a separate fee for this service.[4] Notably,

---

[4] Southern Title might have been allowed to prepare the mortgage in this case without the involvement of a lawyer, but even that is unclear under the facts of this case. Under Florida law, "title insurers are permitted to prepare deeds, mortgages, satisfactions and other documents affecting the legal title to be insured," so long as this is done as a mere necessary incident to honor a title insurance commitment. *Preferred Title Servs., Inc. v. Seven Seas Resort Condo., Inc.*, 458 So. 2d 884, 886 (Fla. 5th DCA 1984). However, such conduct is

Exhibit "A" was incorporated by reference in the mortgage, and was therefore a part of the mortgage that the Burgess Defendants agreed to prepare. At a minimum, a genuine issue of material fact exists as to whether the Burgess Defendants neglected a reasonable duty by failing to review the legal descriptions prepared by the title agent.

### *Whether the Trial Court Abused its Discretion in Denying JBJ's Motion for Leave to Amend the Complaint?*

JBJ next argues that the trial court abused its discretion in denying JBJ's motion for leave to amend the complaint.

The standard of review for an order denying leave to amend a complaint is abuse of discretion. *Port Marina Condo. Ass'n v. Roof Servs., Inc.*, 119 So. 3d 1288, 1291 (Fla. 4th DCA 2013).

"Leave to amend should not be denied unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile." *Fields v. Klein*, 946 So. 2d 119, 121 (Fla. 4th DCA 2007). "A party may, with leave of court, amend a pleading at or even after a hearing and ruling on a motion for summary judgment." *PNC Bank, N.A. v. Progressive Emp'r Servs. II*, 55 So. 3d 655, 660 (Fla. 4th DCA 2011) (citation and internal quotation marks omitted).

Here, JBJ did not abuse the privilege to amend, as there were no prior amendments to the complaint. Moreover, under *PNC Bank*, JBJ's motion for leave to amend was not untimely, as a party may seek leave to amend a pleading even after a ruling on a motion for summary judgment.

Furthermore, allowing the amendment would not procedurally prejudice the Burgess Defendants, as they would still be afforded sufficient opportunity to prepare a defense against the amended complaint. *See Marquesa at Pembroke Pines Condo. Ass'n v. Powell*, 183 So. 3d 1278, 1281 (Fla. 4th DCA 2016) ("Furthermore, Appellee is unlikely to be unduly prejudiced by the addition of this count. While the addition of the contract

---

unauthorized "if a charge was made for such services separate and apart from the 'regular title insurance premium' which the insurer is authorized to charge." *Id.* Here, the Settlement Statement for the transaction indicated that it was Chicago Title Insurance Company—not Southern Title—that issued the title insurance. But even assuming Southern Title could have prepared the mortgage without Mr. Burgess, he arguably had the duty to ensure that the mortgage was prepared correctly when he agreed to prepare it and made a separate charge for such services.

claim may prevent Appellee from prevailing at summary judgment, he would still be afforded sufficient opportunity to prepare a defense for the breach of contract claim.").

Finally, because we conclude that there were genuine issues of material fact remaining as to whether an attorney-client relationship existed, we likewise conclude that JBJ's proposed amendment would not have been futile.

In sum, we conclude that the trial court abused its discretion in denying JBJ leave to amend its complaint where there were no prior amendments to the complaint, the record does not show that the Burgess Defendants would have been prejudiced, and the amendment would not have been futile.

### *Fee Appeal*

Because we are reversing the summary judgment in favor of the Burgess Defendants, we vacate the order denying the Burgess Defendants' motion for attorney's fees. We do not express any opinion as to the validity of the Burgess Defendants' proposal for settlement. *See Emergency Servs. 24, Inc. v. United Prop. & Cas. Ins. Co.*, 165 So. 3d 756, 757 (Fla. 4th DCA 2015) ("Because we are reversing the summary judgment in favor of the insurer, the question of whether the insurer is entitled to attorney's fees is premature. We therefore reverse and vacate the order denying attorney's fees without expressing any opinion as to the validity of the proposal for settlement.").

### *Conclusion*

We reverse the final summary judgment and the order denying JBJ's motion for leave to amend its complaint, and we remand for further proceedings consistent with this opinion. We also vacate the order on the Burgess Defendants' Motion for Entitlement to Fees and Costs, as that issue is premature in light of our reversal of the summary judgment.

*Reversed and Remanded.*

WARNER and GROSS, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**